**WAYNE-GOSSARD CORPORATION,**
Appellee,

v.

**MORETZ HOSIERY MILLS,**
**INC., Appellant.**

No. 75–1240.

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 12, 1975.

Decided March 15, 1976.

---

David Rabin, Greensboro, N. C. (Walter L. Beavers, Greensboro, N. C., and Richard A. Williams, Newton, N. C., on brief), for appellant.

Charles B. Park, III, Charlotte, N. C. (Joell T. Turner, Parrot, Bell, Seltzer, Park & Gibson; Joseph W. Grier, Jr., Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston, Charlotte, N. C., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and WINTER and WIDENER, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

In this patent suit brought by Wayne-Gossard Corporation against Moretz Hosiery Mills,[1] the issues were these: the validity of two Claims—4 and 5—of reissue patent No. RE 26,667, dated September 23, 1969, now held by Wayne-Gossard and embracing a foot cover and the method of its manufacture, 35 U.S.C. § 251;[2] the charge of infringement of these Claims by Moretz; whether, if infringement proven, Moretz might invoke relief permitted by the statute giving remedies for unintended infringements occurring between the grants of the original patent and the reissue, 35 U.S.C. § 252; the defense of estoppel of Wayne-Gossard through an early apparent stipulation not to sue Moretz for infringement of the reissue; and a questioning of the court's jurisdiction to entertain the action, the allegation being that Wayne-Gossard was merely a licensee, not an assignee, and so could not sue for infringement.

The District Court, non-jury, upheld the litigated Claims—4 and 5—of the reissue; found infringement by Moretz; overruled Moretz' plea of estoppel; sustained Wayne-Gossard's standing to sue; and denied Moretz recourse to the statutory protection of innocent intervening infringements. *Wayne-Gossard Corp. v. Moretz Hosiery Mills, Inc.*, 384 F.Supp. 63 (W.D.N.C.1974). An accounting for damages was deferred. From each of these rulings Moretz appeals.

At this stage a preliminary explanation of the origin of reissue Claims 4 and 5 is indispensable to an understanding of them. They are successors to Claim 3 in the original patent for a foot cover. Claim 3 was held for naught by this court in 1968 for overclaiming and indefiniteness, 35 U.S.C. § 112. *Wayne Knitting Mills v. Russell*

*Hosiery Mills, Inc.*, 400 F.2d 964, (4 Cir. 1968), cert. denied, 393 U.S. 1064, 89 S.Ct. 717, 21 L.Ed.2d 707 (1968). On September 23, 1969 the reissue was obtained by the original patentee and Wayne-Gossard together; at the same time Claim 3 was surrendered. 35 U.S.C. § 251. Trimmed of its overbreadth, the old Claim 3 became Claims 4 and 5 of the reissue.

On this review, we cannot say that the trial judge's fact findings are "clearly erroneous"; in addition, we accept his conclusions of law in all respects except in the withholding from Moretz of the permissible statutory pardon for a bona fide intervening infringement, 35 U.S.C. § 252. Consequently, we must vacate so much of the final judgment as refused this succor to appellant Moretz and remand the case for determination by the District Court of the application of the section 252 defense and the relief merited. Only in this regard will the judgment be disturbed. The reasons for these several enunciations follow.

I.

The relevant subject of the original and reissue patents is a knitted stretched yarn foot cover (to be worn in a lady's shoe), and the method of its manufacture. With these aims precisely described in the District Judge's opinion, and with his clear explication of their inventiveness, there is no necessity to detail again the cover's structure or method of production. It is enough now to observe that the patentability of the cover and its fashioning, as described in Claims 4 and 5 of the reissue, is found in these characteristics of the cover: its service as a sock in a low-cut shoe, "with the foot cover being of such height as to be positioned below the ankle in foot hugging, stretched condition, completely concealed from view when worn with low cut shoes";

---

1. Wayne-Gossard Corporation is an Indiana corporation with offices in Tennessee; Moretz holds a North Carolina charter and has its principal place of business there. The action was commenced October 3, 1973.

2. The original patent, No. 3,059,458, was issued October 23, 1962, to Edgar Gary Sarbo, and was assigned by him to his firm. Thereafter it

was assigned in sequence as follows: to Renfro Hosiery Company of North Carolina on December 2, 1964; to May Hosiery Mills on December 22, 1964; and on June 17, 1965 to Wayne Knitting Mills which by corporate merger became Wayne-Gossard Corporation, acquiring all rights in the patent on or about January 31, 1967.

the absence of any binding or skin-burrowing rim around the foot entry opening; a tubular body adaptable "to function as tip, sole and heel portions" and reversible; and the whole of economical manufacture. The conception was born of a women's preferred style of dressing with bare legs while still enjoying the shoe comfort provided by a sock.

█ The integrity of the patent is vouched by the District Judge's studied and satisfying conclusion, starting with the statutory presumption of validity, 35 U.S.C. § 282, and demonstrating the failure of Moretz to carry its burden of establishing invalidity. In this balancing of the evidence we perceive no error. While validity and infringement are, of course, separate issues, it is nonetheless noteworthy here that in *Wayne-Gossard Corp. v. Russell Hosiery Mills,* 483 F.2d 770 (4 Cir. 1973), we enforced the reissue against infringement. Although validity was not explicitly raised, it was impliedly and clearly attested in the opinion by Circuit Judge Field. Id. 772.

█ No virtue is seen in Moretz' argument that the reissue is invalid because not sought within two years of the original patent. The answer is that the reissue did not enlarge, but narrowed, the scope of the original patent, 35 U.S.C. § 251. The feature of narrowness also proves its qualification as a permissible reissue under the statute. In short, Moretz cannot prevail in any of its attacks on the standing of the reissue.

## II.

█ There was infringement of Claims 4 and 5, the District Court held, by Moretz' production of its Footsocks Styles Nos. 2444, 2445, 2446, 2447, 2448 and 2480. The judge labeled them as copies of Wayne-Gossard's. However, he saw no such imitation in Moretz' 22000 series. The grounds of this conclusion on infringement are carefully spelled out by him.

Appellee Wayne-Gossard's brief states that neither party has appealed from the District Court's findings on infringement. This averment is not questioned in appellant Moretz' reply brief. True, in both of the latter's briefs and in oral argument there is mention of the subject but only barely, with no accusation of error in the finding of infringement. Moreover, the "*Joint* Appendix" does not contain testimony to that point. Rather, it seems, Moretz relies on resort to the statute, 35 U.S.C. § 252, for a relaxing of the traditional sanctions upon infringement. That statute and Moretz' invocation and entitlement to it in the circumstances of this case follow.

## III.

Some relief for intervening infringement lies in 35 U.S.C. § 252. For a closer understanding of its provisions, we cannot avoid setting out the language in extenso of the second paragraph of the section. With letters and numerals inserted to indicate the separate divisions, it is this:

"[A] No reissued patent shall abridge or affect the right of any person or his successors in business who made, purchased or used prior to the grant of a reissue anything patented by the reissued patent, to continue the use of, or to sell to others to be used or sold, the specific thing so made, purchased or used, unless the making, using or selling of such thing infringes a valid claim of the reissued patent which was in the original patent. [B] The court before which such matter is in question may provide [1] for the continued manufacture, use or sale of the thing made, purchased or used as specified, or [2] for the manufacture, use or sale of which substantial preparation was made before the grant of the reissue, and [3] it may also provide for the continued practice of any process patented by the reissue, practiced, or for the practice of which substantial preparation was made, prior to the grant of the reissue, [C] *to the extent and under such terms as the court deems equitable* for the protection of investments made or business commenced before the grant of the reissue. July 19, 1952, c. 950, § 1, 66 Stat. 808." (Accent added.)

█ In the first sentence of this paragraph is granted an absolute right of an

infringer of the reissue patent to continue in the use and sale of the articles made, purchased or used by the infringer prior to the grant of the reissue. The District Judge immediately points out that this portion of the statute, as is evident, "does not permit the further *making* of patented products". At all events Wayne-Gossard presses no claim for damages in regard to those covers which come within the terms of the first sentence.

However, Moretz emphasizes that under the second sentence of the paragraph the court "*may* provide for the continued manufacture, use or sale" of the article, or "for the manufacture, use or sale of which substantial *preparation* was made before the grant of the reissue", and also "for the continued practice of any process patented by the reissue, practiced, or for the practice of which substantial *preparation* was made, prior to the grant of the reissue". All of this is obtainable only "to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced before the grant of the reissue".

■ A pat analysis of the present controversy was made by the District Court: "Stated simply, the heart of the disagreement centers around the proposition of whether or not this portion of the statute applies to narrowed reissues". Moretz contends that it does run to narrowed reissues, while Wayne-Gossard denies it such play, contending that it pertains only to broadened reissues. This court holds for Moretz here.

This conclusion finds support in the expository essay of P. J. Federico, Examiner-in-Chief, United States Patent Office, on the Patent Act of 1952 in which section 252 first appears, 35 U.S.C. pp. 1, 46. He elucidates:

"If the reissued patent has valid claims in it which were also in the original patent, and these claims are infringed, then the question of intervening rights cannot arise. The question of intervening rights can only arise when the only claims infringed are claims of the reissued patent which were not in the original patent. This test is very simple to apply, especially since the specifications of reissued patents for some time have been printed in such a manner as to show which claims are repeated from the original patent; if the defendant infringes repeated original claims he is liable for infringement, if he does not infringe repeated original claims but infringes only new or amended claims, then the question of intervening rights may be raised. This test not only applies in the case of broadened reissues, but it extends the protection of intervening rights to so-called narrowed reissues which marks another departure from the case law. Assume an original patent with a broad claim which might have been infringed in terms, and a reissue which omits this broad claim and contains a new narrower claim which is infringed by the intervenor, he will be protected under the statute since he does not infringe a repeated original claim."

■ The argument of the District Judge for his tenet is that the fairness of restricting "the doctrine of intervening rights to broadened reissues is apparent". A likely infringer who has in good faith steered his course by the lesser scope of the original patent would upon a widening of the scope become, without fault, an active transgressor of the broader reissue. This result, rationalizes the judge, does not come about if there is only a narrowing of the patent claims. However, specifically, Moretz was declined the benefit of this statute by the judge, for the reason that here the infringer "necessarily infringed the broad original claim from the outset, if he, indeed, infringes the narrower reissue claim." In this the District Judge is adverting to the first sentence of the second paragraph of section 2, supra, according exemption of prior-made articles from the reissue's efficacy only if they did not infringe "a valid claim of the reissued patent which was in the original patent".

While we do not embrace these views, we are not blind to the force of their reasoning. The judge doubtlessly theorized that the

original claim *in effect* survived in the reissue, since the reissue claims were still the core of the original claim. In furtherance, perhaps, his thought was that the original claim is not erased in toto but simply terminated. But this translation is not acceptable, we think, because the original claim was at an end, denuded of all potency save as a bench mark of interpretation, at the time of the reissue's infringement.

Again, our determination—that section 252 applies to narrowed reissue claims—is not altered by the argument that even with our interpretation the instant facts do not warrant extension of the statute's advantages to Moretz. These facts are said to disclose the absence of any deception of Moretz by the original patent, in that it plainly described the same foot covers as does the reissue. But this contention was squarely refuted in *Wayne-Gossard Corp. v. Russell Hosiery Mills,* supra, 483 F.2d 770 (4 Cir. 1973). Another basis for barring Moretz from avail of the statute was that the trial court felt that the alleged expenditures and investments made and obligations incurred by Moretz in preparation for making the socks had not been proved with requisite precision. In view of our holding that 35 U.S.C. § 252 is applicable in the instant circumstances, we believe that all of these questions should be reconsidered in that light, and upon such additional evidence as may be available, on remand.

The authorities on which the judgment on appeal was rested in this aspect of the litigation are not convincing that ours is a mistaken resolution of the statute's intendment; predominantly these decisions predate the January 1, 1953 effective day of the statute. Nor are the other citations to us precedents sufficient to persuade the court to a change of mind.[3]

Finally, at this juncture of the case, we leave to the District Court application of the appropriate remedial provisions of section 252 to the factual setting just outlined. To that end we will remand the cause to the trial court.

### IV.

■ Next, Moretz insists that Wayne-Gossard is estopped to prosecute this action by reason of a stipulation signed by the latter in a dismissal of a prior action (Civil Action No. 2014, W.D.N.C.1969) in which May Hosiery Mills and Wayne Knitting Mills, predecessors in title to the instant Sarbo patent, were the plaintiffs.[4] Infringement was there charged to Moretz, appellant here. By a stipulation of all parties, the suit was dismissed with the express understanding that the dismissal was "with prejudice as to any claim by plaintiffs and their assignees of United States Letters Patent No. 3,059,458 against defendants *arising* out of Claim 3 of the said patent".

Although Wayne-Gossard is an ultimate assignee of those plaintiffs, the litigation before us *does not arise* out of Claim 3 of the Sarbo patent. As noted, supra, section III, the viability of that Claim ceased upon grant on September 23, 1969 of the reissue Claims 4 and 5.

### V.

■ The last dispute is upon the jurisdiction of the District Court, the debate going to the qualification of Wayne-Gossard as a plaintiff. The assailing allegation is that Wayne-Gossard is but a licensee and the actual owner is Renfro Hosiery Mills. The District Judge painstakingly traced the titles to the original and reissue patents into Wayne-Gossard as the exclusive and unconditional owner of them. Expressing our agreement with this conclusion we affirm it for the reasons stated in his Memorandum Decision in an early period of this litigation,

---

3. *Cf. White v. Fafnir Bearing Co.,* 263 F.Supp. 788, 809–13 (D.Conn.1966), *aff'd,* 389 F.2d 750 (2 Cir. 1968). There the District Court applied section 252 to a narrowed reissue in deciding whether the particular infringer merited relief. Neither the applicability of the statute to nar-

rowed reissues nor the result of its application to those facts was contested on appeal.

4. We do not pause to pass on the point that estoppel is not before the court because not specially pleaded. F.R.Civ.P. 8(c).

*Wayne-Gossard Corp. v. Moretz Hosiery Mills, Inc.,* 384 F.Supp. 63 (W.D.N.C.1974).

Save for the remand heretofore mentioned in connection with the appellant's intervening rights under 35 U.S.C. § 252, the judgment of the District Court remains undisturbed.

Vacated and remanded in part, and otherwise affirmed.