**GENERAL ELECTRIC COMPANY, Plaintiff,**

v.

**HOECHST CELANESE CORPORATION and Celanese Engineering Resins, Inc., Defendants.**

**Civ. A. No. 87–458 JRR.**

United States District Court, D. Delaware.

Nov. 9, 1988.

David A. Anderson of Potter Anderson & Corroon, Wilmington, Del., for plaintiff. William F. Kilgannon, Stanley L. Amberg and William J. Hone of Davis Hoxie Faithfull & Hapgood, New York City, of counsel.

Howard M. Handelman of Bayard, Handelman & Murdoch, Wilmington, Del., for defendants. John F. Lynch, Michael Macklin and Russell T. Wong of Arnold, White & Durkee, Houston, Tex., of counsel.

## MEMORANDUM OPINION

ROTH, District Judge:

General Electric Company ("GE") charges in this suit that Hoechst Celanese Corporation ("HCC") and Celanese Engineering Resins, Inc. ("CER") have infringed GE's U.S. Patent No. 3,953,394 ("'394 Patent"). The patent, asserting forty claims, covers a plastic made of a mixture of polyethylene terephthalate ("PET") and polybutylene terephthalate ("PBT"). HCC and CER answered and counterclaimed for a declaration of noninfringement, invalidity and unenforceability of GE's patent. In addition, HCC and CER individually and jointly have now filed motions for summary judgment.

HCC individually argues in support of its motion that because Claims 1–37, 39 and 40 were reexamined, GE's claims of infringement did not legally arise until after HCC's alleged infringement had stopped. As for Claim 38, HCC contends that, properly construed, it does not reach a product containing reinforcing filler. Lastly, HCC urges that the presence of reinforcing filler materially affects the basic and novel characteristics of the product covered by Claim 38 and accordingly Claim 38 does not read on HCC's product.

HCC and CER argue in their joint motion for summary judgment that the amendments made to Claims 5–37, 39 and 40 during reexamination failed to exclude from the claims' scope compositions containing PET, PBT and PET/PBT copolymers and that these claims therefore still read on prior art. In addition, they contend that Claims 1, 3–6, 8–16, 18–20, 22–31 and 34–40, each read on compositions which may optionally contain a PET/PBT copolymer and as a result also read on prior art.

Finally, CER individually argues, as HCC has done in its motion, that the presence of reinforcing filler materially affects the basic and novel characteristics of the products covered by Claims 1–4 and 38 and that accordingly those claims are not infringed by CER.

## I

Rule 56 of the Federal Rules of Civil Procedure provides the standard for summary judgment: Summary judgment should be granted when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Moeller v. Ionetics, Inc.,* 794 F.2d 653, 656 (Fed.Cir.1986) (citing Fed.R.Civ.P. 56). The burden of proving that there are no genuine issues of material fact rests on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Summary judgment may be granted if there is "evidence that is merely colorable ... or [that] is not significantly probative." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510. Furthermore, reliance on mere assertions in the pleadings is not permissible. *Id.* There must be enough evidence to enable a reasonable jury to find for the nonmoving party on the issue for which summary judgment is sought. *Id.* at 249, 106 S.Ct. at 2510.

If the nonmoving party fails to make a sufficient showing of an essential element of the case for which that party has the burden of proof, the moving party is entitled to summary judgment as a matter of law. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. Finally, it is well-settled law that evidence should be viewed in a light most favorable to the nonmoving party. *Adickes v. S.H. Cress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 900 (3d Cir.), *cert. dismissed,* —— U.S. ——, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987); *Moeller,* 794 F.2d at 656 (citing *SRI International v. Matsushita Electric*

*Corp.,* 775 F.2d 1107, 1116 (Fed.Cir.1985) (en banc)).

Although the same standard for summary judgment is used in patent cases as in other cases, the standard is somewhat harder to meet in patent cases, because not only must no genuine issues of material fact exist, but to grant summary judgment properly, the trial court must in addition correctly construe the claim and conclude that it would be impossible for the trier of fact to find infringement. *Moeller,* 794 F.2d at 656 (citing *Porter v. Farmers Supply Service, Inc.,* 790 F.2d 882, 884 (Fed. Cir.1984)). We address the defendants' arguments in sequence with this summary judgment standard in mind.

## II

The original '394 Patent, with forty claims, was issued on April 27, 1976. All its independent claims, save Claim 38, used the transitional phrase "comprising"; Claim 38 used the transitional phrase "consisting essentially of." Following a reexamination proceeding conducted by the United States Patent and Trademark Office ("PTO"), that Office issued a Reexamination Certificate on June 2, 1987. Under its terms, those independent claims that had previously used the transitional phrase "comprising" were amended to read "consisting essentially of"; Claim 38 stood unamended. Before June 2, 1987, the date of the Reexamination Certificate, HCC terminated its allegedly infringing activity.

According to 35 U.S.C. section 307(b), a reexamined patent's claims have the same effect as a reissued patent's claims under 35 U.S.C. section 252. Section 252 provides that if claims in the original and in the reissued patent are "identical," the reissued claims are deemed a continuation of the original claims; if a claim is no longer identical, the effect of the reissued claim dates only to the time of reissue. To preserve identity, as the Federal Circuit has ruled, the original and reissued claims need not be verbatim twins, but they must be "without substantive change." *Kaufman*

*Co. v. Lantech, Inc.,* 807 F.2d 970, 977 (Fed.Cir.1986).

The question then arises whether "substantively changed" applies not only to claims that are broadened by reissue or reexamination, *see, e.g., Seattle Box Co. v. Industrial Crating & Packing, Inc.,* 731 F.2d 818, 828 (Fed.Cir.1984), but also to claims that are narrowed. The cases of narrowed reissue claims, cited by the plaintiff, deal with the doctrine of intervening rights [1] under circumstances in which the courts found that a broader claim of the original patent also appeared in the reissued patent. In these situations, in which the new, narrowed claim added by reissue, fell within the scope of the surviving broader claim, the courts held that the doctrine of intervening rights did not apply to the narrowed claim. *Colt Industries Operating Corp. v. Index–Werke KG,* 205 U.S. P.Q. (BNA) 990, 1005 (D.D.C.1979); *Corometrics Medical Systems, Inc. v. Berkeley Bio–Engineering, Inc.,* 193 U.S.P.Q. (BNA) 467, 478 (N.D.Cal.1977).

We are not, however, in the present case dealing with a narrowed claim which falls within the scope of a broader surviving claim. The broader claim here did not survive reexamination and the narrowed version of it, which resulted from the reexamination, cannot breathe life into the broader claim which was found on reexamination to have been too broad to be valid.

In a somewhat similar case, *Wayne–Gossard Corp. v. Moretz Hosiery Mills, Inc.,* 539 F.2d 986 (4th Cir.1976), the court, in considering whether the doctrine of intervening rights applied to claims narrowed by reissue, quoted the expository essay of P.J. Federico, Examiner–in–Chief, United States Patent Office, on the Patent Act of 1952, in which section 252 first appears:

> Assume an original patent with a broad claim which might have been infringed in terms, and a reissue which omits this broad claim and contains a new narrower claim which is infringed by the intervenor, he will be protected under the statute since he does not infringe a repeated original claim.

539 F.2d at 990 (quoting 35 U.S.C. pp. 1, 46).

The district court in *Wayne–Gossard* had ruled that the doctrine of intervening rights did not excuse defendant's infringement:

> Narrowed reissues ... present an entirely different question, since the infringer will have necessarily infringed the broad original claims from the outset, if he indeed infringes the narrower reissue claim. Under these conditions, the infringer commences his activities in the inequitable position of an infringer, and the patentee does nothing more in obtaining his narrowed reissue than dedicate into the public domain that scope of patent protection lying between the narrowed reissue claim and the broad original claim.

*Wayne–Gossard Corp. v. Moretz Hosiery Mills, Inc.,* 384 F.Supp. 63, 74 (W.D.N.C. 1974). The Court of Appeals for the Fourth Circuit reversed, holding that the doctrine of intervening rights did apply to narrowed reissue claims, and commented as follows on the opinion of the court below:

> While we do not embrace these views, we are not blind to the force of their reasoning. The judge doubtlessly theorized that the original claim *in effect* survived in the reissue, since the reissue claims were still the core of the original claim. In furtherance, perhaps, his thought was that the original claim is not erased in toto but simply terminated. But this translation is not acceptable, we think, because the original claim was at

---

**1.** "Intervening rights" are created by the second sentence of § 252 which protects the rights of any person who "made, purchased or used prior to the grant of a reissue anything patented by the reissued patent." 35 U.S.C. § 252. Further, as the Fifth Circuit stated:

> [S]ection 252 gives [the alleged infringer] an absolute right to continue using [the accused machine] without regard to the extent of its use prior to reissue, and subject only to the requirement that *its use does not infringe an original valid claim which was carried over into the reissue.*

*Southern Saw Service v. Pittsburgh–Erie Saw Corp.,* 239 F.2d 339, 342 (5th Cir.1956).

an end, denuded of all potency save as a bench mark of interpretation, at the time of the reissue's infringement.

539 F.2d at 990–91.

We find this reasoning to be persuasive in the present case. Because the original claims 1–37, 39 and 40 were found on reexamination to be too broad to be valid and were as a result narrowed by the reexamination, we find that they have been "substantively changed." *See Fortel Corp. v. Phone–Mate, Inc.*, 825 F.2d 1577, 1580–81 (Fed.Cir.1987) (narrower reexamined claim, having broader limitation than original claim, is not substantively identical). These claims previously employed, directly or indirectly, the transitional phrase "comprising"; they now employ the transitional phrase "consisting essentially of." In the lexicon of patent law, these words have long conveyed distinct meanings. "Comprising" leaves the claim open for the inclusion of unspecified ingredients. "Consisting essentially of" restricts the inclusion of unspecified ingredients to those ingredients that do not "materially affect the basic and novel characteristics" of the claim. *Ex parte Davis and Tunkkanen*, 80 U.S.P.Q. (BNA) 448, 450 (Patent Office Bd.App.1948).

GE itself accepts that its claims have been "narrowed." GE's Oct. 27, 1987, Answering Brief at 13 (D.I. 14). Because identity has been disrupted, the effect of these claims dates only to the time of the reexamination. HCC has not engaged in the allegedly infringing activity since that time. Accordingly, the Court grants HCC's motion for summary judgment as it pertains to Claims 1–37, 39 and 40, having found, as a matter of law, that HCC has not infringed those claims.

### III

Claim 38, unlike the other claims, survived the reexamination process unchanged because it originally employed the transitional phrase "consisting essentially of." Its language was not altered by the reexamination. Accordingly, under 35 U.S. C. section 252, reexamined Claim 38 is a continuation of original Claim 38 and has been in effect continuously from the date of the original patent.

HCC attacks Claim 38 on purely legal arguments going to its proper interpretation. First, HCC refers to reexamined Claim 5 and observes that it tracks Claim 38 except for the addition of one other ingredient: "reinforcing filler." HCC then attempts to invoke the doctrine of claim differentiation. That doctrine provides that an "express limitation in one claim negates any intent to similarly limit, by implication, any claim in which such limitation is not expressed." *National Tractor Pullers Association v. Watkins*, 205 U.S.P. Q. (BNA) 892, 912 (N.D.Ill.1980). HCC, motivated by the fact that its allegedly infringing product contained filler, argues that a correct application of the doctrine should convince the Court that reexamined Claim 5 exclusively covers the product when it has filler, and that Claim 38 covers the product only if it does *not* have the filler. The Court is not convinced: HCC's argument is a non-sequitur. That, under the doctrine of claim differentiation, limitations of one claim are not read *into* unlimited claims does not conversely mean that those limitations are read *out of* those unlimited claims. *Cf. Tandon Corp. v. U.S. Intern. Trade Com'n*, 831 F.2d 1017, 1021–24 (Fed.Cir.1987) (where claims 1 and 12 described a "first transducer" and claim 5 a "first non-gimballed transducer," Commission, in finding no infringement, correctly rejected plaintiff's argument that "first transducer" in claims 1 and 12 had to be gimballed). Rather, as HCC observes in its reply brief, standard patent practice exhorts the drafter to file broad, intermediate, and narrow claims, the latter two necessarily being subsets of the former. HCC's Nov. 12, 1987, Reply Brief at 9 (D.I. 15); 1 *L. Horwitz, Patent Office Rules and Practice*, § 75.7. Moreover, "two claims which read differently can cover the same subject matter." *Tandon Corp.*, 831 F.2d at 1023. Thus, HCC's motion for summary judgment on the ground that Reexamined Claim 38 must *exclude* any composition having a "reinforcing filler" will

be rejected because there is no support in the law for HCC's position.

## IV

HCC next advances the factual argument that reinforcing filler is an additional ingredient that "materially alters the basic and novel characteristics" of the composition covered by Claim 38 and, therefore, Claim 38, circumscribed by its "consisting essentially of" language, cannot cover compositions with filler. HCC identifies six properties as being the basic and novel characteristics of GE's patented plastic: heat distortion temperature, flexural strength, flexural modulus, tensile strength, elongation, and impact strength. According to tables in the GE patent, the presence of approximately 30% by weight reinforcing filler significantly enhances, by a multiple ranging from two to ten, these characteristics except elongation. The patent also acknowledges that 1% by weight filler increases the heat distortion temperature and improves moldability markedly. HCC's allegedly infringing product contained 14% to 51% reinforcing filler. McNally Declaration, HCC's Nov. 12, 1987, Reply Brief at Tab G (D.I. 15).

In response, GE rejects that the six properties HCC identified are the basic and novel characteristics of the '394 Patent. Rather, according to GE, the basic and novel characteristics of the plastic are its stable homogeneity and its substantially uniform crystallinity.

In support of this argument, GE chronicles the history of its invention. Prior to the '394 Patent, the molding of compositions of PET or of PBT were known but not exploited. '394 Patent at Column 1. It was also known that filler, such as glass fibers, could be added to either PET or PBT compositions, enhancing certain properties, including tensile strength and heat distortion resistance. Borman Declaration, Appendix to GE's Mar. 22, 1988, Answering Brief (hereinafter 3/22 Appendix) at A17, ¶ 8 (D.I. 32A). The drawback of PET compositions was that crystallization was slow and uneven, making precise molding difficult. Hobbs Declaration, 3/22 Appen-

dix, at A109, ¶ 5. The drawback of PBT compositions was the expense of its raw materials. '394 Patent at Column 1. Because PBT and PET crystallized at vastly different rates, formation of a stable, compatible blend of the two was thought unlikely. '394 Patent at Column 2. The product covered by the '394 Patent confounded this expectation. It was discovered that PET and PBT were molecularly compatible and, when blended, they formed a homogeneous melt. '394 Patent at Column 4. In addition, crystallinity of the PET/PBT blend was even. '394 Patent at Column 13. One result was that the product did not delaminate; i.e., it did not easily shed its plastic skin. '394 Patent at Columns 4 & 18. Addition of filler did not affect these qualities. '394 Patent at Column 19. *See also* Borman Declaration, 3/22 Appendix at A19–26. When the patent was prosecuted originally and during its reexamination, its proponent stressed that the PET/PBT blend had stable homogeneity and substantially uniform crystallinity. Request for Reconsideration, 3/22 Appendix at A37–38 & A41; Response to Official Action, *id.* at A45, A57. GE cited these characteristics to distinguish its PET/PBT blend from prior art PET/PBT copolymers. Borman Affidavit, 3/22 Appendix at A18–19. On the other hand, the patent ostensibly covers PET/PBT compositions "unmodified as well as reinforced" and the patent examiner considered filler an optional ingredient. '394 Patent at Column 2; Official PTO Action, 3/22 Appendix at A130–31.

Determining the scope of a patent is a matter of law, *Uniroyal, Inc. v. Rudkin–Wiley Corp.,* 837 F.2d 1044, 1054 (Fed.Cir. 1988) (citing *Fromson v. Advance Offset Plate, Inc.,* 720 F.2d 1565, 1571 (Fed.Cir. 1983)), that has factual underpinnings. *Tandon Corp.,* 831 F.2d at 1021. As the Court of Appeals for the Federal Circuit stated in *Perini America, Inc. v. Paper Converting Machine, Co.,* 832 F.2d 581 (Fed.Cir.1987):

> Like all legal conclusions, [claim construction] arises out of and rests on a foundation built of established (undisputed or correctly found) facts. Interpretation of a claim, or of its scope, should not

be assayed until that foundation is in place. If the meaning of terms in the claim, the specification, other claims, or prosecution history is disputed, that dispute must be resolved as a question of fact before interpretation can begin.... With the meaning of terms in the claims, specification, etc., established, it may be necessary to interpret the claim, with their now-defined terms. It is interpretation based on established facts that constitutes a legal conclusion reviewable as a matter of law.

*Id.* at 584.

When the language of a claim is at issue, it is proper to consult other pertinent evidence in addition to the claim itself. The Federal Circuit has included in its examination factors such as (1) the prosecution history, (2) the patent specification, (3) other claims in the patent, and (4) expert testimony. *Newell Companies, Inc. v. Kenney Manufacturing Co.,* 606 F.Supp. 1282, 1291 (D.R.I.1985) (citations omitted).

■ In the present case, we hold that the determination of the basic and novel characteristics of the plastics patented by the '394 patent is a part of determining the scope of the claim. As such, it is a question of law that we must decide once the factual inquiry is complete and all pertinent terms have been defined. So far, we have examined the prosecution history, the patent specification, and other claims in the patent. What constitutes the basic and novel characteristics of the patented plastic still escapes us.[2]

■ We find resolution of the dispute over what constitutes the basic and novel characteristics of the Claim 38 composition inappropriate for summary judgment. When the meaning of the terms of a patent are genuinely contested, a factual dispute arises, precluding summary judgment. *Howes v. Medical Components, Inc.,* 814 F.2d 638, 643 (Fed.Cir.1987). Here, whether the "basic and novel characteristics" are the properties that HCC suggests or the blend's homogeneity and crystallinity, as GE maintains, is genuinely contested.

Alternatively, accepting *arguendo* that the properties HCC suggests are the basic and novel characteristics, a factual controversy remains as to whether the addition of reinforcing filler materially alters or merely enhances these characteristics. *Compare Ex parte Davis and Tunkkanen,* 80 U.S.P.Q. (BNA) 448 (Patent Office Bd.App. 1948) *with In re Herz,* 537 F.2d 549, 552 (C.C.P.A.1976).

Thus, in accordance with the guidance supplied to us by the Federal Circuit, this Court will deny HCC's motion for summary judgement as it pertains to Claim 38 because there are facts to be determined before a ruling on the law can be made. Consistent with the accepted method of claim construction, we will take advantage of the availability of expert witnesses at trial to assist us in determining what properties are encompassed by the basic and novel characteristics of the plastics covered by the '394 patent. *See Moeller v. Ionetics,* 794 F.2d 653, 657 (Fed.Cir.1986) (although the use of experts is generally a matter of discretion with the trial judge, in a patent case involving complex scientific principles it was an abuse of discretion for the trial judge not to allow expert testimony on claim interpretation).

### V

Turning to defendants' joint motion for summary judgment, HCC and CER first argue that the amendments to claims 5–37,

---

2. We note that the parties also seem somewhat confused on this issue. At oral argument, the defendants' counsel stated that adding a plasticizer would not change the basic and novel characteristics of the plastic. Transcript of June 10, 1988, Oral Argument at 14 (D.I. 48). If this were true, the basic and novel characteristics could not be those claimed by the defendants. Addition of a plasticizer would lower the heat distortion temperature, the flexural strength, the flexural modulus, the tensile strength, and the elongation and impact strengths. Although this tempts us to conclude that the basic and novel characteristics are those claimed by GE, we decline to do so because we find insufficient evidence to conclude that GE's position is correct and because we realize that sometimes mistakes are uttered by counsel under the fire of oral argument. *Cf. Republic Industries v. Central Pennsylvania Teamsters,* 693 F.2d 290, 295 (3d Cir.1982).

39 and 40[3] during reexamination failed to exclude from the claims' scope prior art, *viz.* mixtures of PET, PBT, and PET/PBT copolymer. According to the defendants, reexamination was granted in light of two patents: the Fiber, Belgian Patent No. 747,243 and the Kurashiki, British Patent No. 1,060,401. Order Granting Request for Reexamination, Reexam. Cont. No. 90/000736, Appendix to Defendants' Mar. 3, 1988 Opening Brief (hereinafter 3/3 Appendix), Tab G, at 323–25; Order Granting Request for Reexamination, Reexam. Cont. No. 90/000860, 3/3 Appendix, Tab A; Decision on Concurrent Office Proceedings, 3/3 Appendix, Tab G, at 354.

The basic controversy was whether the claims were so broad as to encompass compositions largely composed of PET/PBT copolymers and whether the claims thereby trespassed on prior art. GE's counsel identified the problem as whether their plastics "contain a *substantial* portion of PET/PBT copolymer and are therefore, *essentially* the same PET/PBT compositions taught by Kurashiki and Fiber, regardless of whether the claims are characterized as blends or PET/PBT copolymer." Aug. 27, 1986, Response to Official Action, 3/3 Appendix, Tab G, at 378 (emphasis added). Viewed in this light, GE argued that because their plastics are directed to a blend without substantial copolymer, they were not made obvious by the previous patents. *Id.* Even though the PTO initially rejected the claims in the patent, it seemed to accept GE's argument that its plastics were not made obvious by the previous patents by basing its rejection on the fact that "[t]he claim terminology, when reasonably interpreted, encompasses blended compositions which may comprise various components,

including blocked material [the PET/PBT copolymer], as well as the two recited linear polymers [plain PET and plain PBT]. The other components [other than PET and PBT] may be in major amounts." PTO Nov. 11, 1986, Communication at 3, 3/3 Appendix, Tab G, at 405.

The Court finds that this statement indicates that the PTO sought to allow GE to patent a plastic that had basic and novel characteristics different than those found in the prior art.[4] This is further demonstrated by the PTO's later statement, made when allowing the amended claims to be patentable: "The claims have been amended, narrowed, to exclude any materials which would alter the basic nature of the composition claimed." PTO Mar. 18, 1987, Statement of Reason for Allowance, 3/3 Appendix, Tab G, at 445. To accomplish this "narrowing," GE amended the independent claims of its patent replacing the transition phrase "comprising" with the phrase "consisting essentially of." PTO Jan. 7, 1987, Examiner Interview Record Summary, 3/3 Appendix, Tab G, at 409. HCC and CER, however, assert that this remedial effort failed for many of the claims. In those claims in which the term "comprising" appeared twice, it was only corrected once. According to the defendants, GE's failure to completely extirpate the "comprising" language, means that these claims, and their dependent claims, still encompass PET/PBT compositions, which are prior art, and therefore are invalid.

Thus, HCC and CER's argument is reduced to the question of what effect the limiting transitional words (either "comprising" or "consisting essentially of") should have on subsequent phrasing within

---

3. Although the defendants assert that Claim 30 is invalid because it failed to exclude prior art, they fail to apply this argument to Claim 30 in either their Opening Brief, *see* Defendants' Mar. 3, 1988, Opening Brief at 15–19 (D.I. 30), or their Reply Brief, *see* Defendants' May 3, 1988, Combined Reply Brief at 17–19 (D.I. 45). Likewise GE has failed to address Claim 30 in this context in its Answering Briefs. *See* GE's Apr. 13, 1988, Answering Brief at 33–41 (D.I. 40). Even though the defendants assert that Claim 30 is not dependent on either Claim 5, 12, 20 or 31, *see* Defendants' Mar. 3, 1988, Opening Brief at

16–18 (D.I. 30), the Court finds that it is dependent on Claim 20. Thus, the Court will deal with the defendants' argument as it pertains to independent Claims 5, 12, 20, and 31 and their dependent claims including Claim 30.

4. For purposes of this analysis, it is irrelevant whether the basic and novel characteristics are the physical properties that HCC and CER claim or the molecular physical characteristics as GE claims.

the patent claim. GE contends that the preceding limiting words control latter terms in the patent if they are narrower, but that the latter terms control if they are more restrictive than transitional terms appearing earlier in the patent claim. The defendants, however, claim that the patent must be read as "plain English" and therefore the subsequent terms have a meaning independent of the preceding limiting transitional words. The Court now addresses whether GE was successful in its attempt to amend its claims, even though not every "comprising" was replaced with "consisting essentially of."

For Claims 5, 12, and 20, only the first "comprising" was corrected, for Claim 31, only the second. For example, Claim 5 now reads:

> A reinforced thermoplastic composition that is rigid at a temperature of 75°–90°F. [comprising] consisting essentially of
>
> A. a stable, blended resinous combination comprising
>
> a. from about 1 to about 99 parts by weight of a poly(ethylene terephthalate) resin and
>
> b. from about 99 to about 1 part by weight of a poly(1,4–butylene terephthalate) resin or a copolyester thereof with a minor amount of an aliphatic or aromatic dicarboxylic acid or an aliphatic polyol and
>
> B. a reinforcing amount of reinforcing filler of said combination.

(The brackets indicate excised words; the underlining indicates amendments.)

Claim 31 now reads:

> An intercrystalline thermoplastic combination that is rigid at 75°–90°F. comprising:
>
> A. A stable, blended resinous combination [comprising] consisting essentially of

**5.** Because the Court's analysis of the transitional phrases in the claims is based on how the terms are used, and not merely where they are used, *cf. Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1272 n. 8 (Fed.Cir.1987), we note that

> a. from about 1 to about 99 parts by weight of a poly(ethylene terephthalate) resin and
>
> b. from about 99 to about 1 part by weight of a poly(1,4–butylene terephthalate) resin or a copolyester thereof with a minor amount of an aliphatic or aromatic dicarboxylic acid or an aliphatic polyol and
>
> B. at least one high molecular weight normally crystalline, normally amorphous or normally partially crystalline and partially amorphous polymer in the concentration range of from about 1 to about 99 parts by weight of A to from about 99 to about 1 part by weight of B.

In Claims 5, 12, and 20, the Court finds that the term "comprising" in the body of the claim [5] does not have its normal legal meaning because it is controlled by the preceding, more restrictive transitional phrase, "consisting essentially of." Thus, as used in these claims, "comprising" does not permit, as it normally would, nonrecited ingredients which, in nature and amount, materially affect the basic and novel characteristics of the "blended resinous combination" in element "A." The effect of having the term "consisting essentially of" appear as the transitional phrase for elements "A" and "B" is to restrict the materials that can be added to the entire composition. It is a simple logical exercise to realize that if an ingredient would affect the basic and novel characteristics of element "A" in Claims 5, 12, and 20, it would also necessarily affect the basic and novel characteristics of the composition covered by the entire claim. Therefore, because the addition of any ingredient that would affect the basic and novel characteristics of the entire composition is prohibited, the addition of any such ingredient to ingredient "A" is likewise prohibited. *Cf. Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1272 n. 8 (Fed.Cir.1987).

the term "comprising" is used in the body of the claim as a transitional term for subelements "a" and "b" of element A in claims 5, 12, and 20. We conclude, however, that our analysis is not changed by this fact.

■ Thus the Court agrees with the plaintiff's assertion that for these claims, the phrase "consisting essentially of" excludes all amounts of copolymer that would materially affect the basic and novel characteristics of the GE plastic. As such, the Court holds that these claims, and their dependent claims, do not read on the prior art and are not facially invalid.

■ As for Claim 31, however, the Court finds that GE's failure to replace "comprising" when used as the transitional phrase is fatal to the claim's validity. Contrary to the assertions of the plaintiff and Mr. Witherspoon, the Court finds that using "comprising" as the transitional phrase leaves the claim open ended. As used in Claim 31, the term "consisting essentially of" has its normal meaning: it restricts the materials that can be added to element "A" to those ingredients that would not affect the basic and novel characteristics of element "A." Here, however, logic does not dictate that merely because unnamed ingredients cannot be added to element "A" that unnamed ingredients cannot be added to the entire composition. The transitional term that covers the entire claim is "comprising." This means that the addition of unnamed ingredients that affect the basic and novel characteristics of the entire composition is permissible.[6] *Cf. Moleculon,* 793 F.2d at 1272 n. 8.

The Court agrees with the defendant's assertion that the use of the transitional phrase "comprising" in reexamined Claim 31 leaves the composition open to the addition of unrecited elements. Because the reexamined Claim 31 reads on compositions that can contain major amounts of PET/PBT copolymer, such that the basic and novel characteristics of the GE blend

are affected, the Court holds that reexamined Claim 31 is invalid on its face. Thus, based on this attack, the Court grants summary judgment for the defendants HCC and CER as it applies to reexamined Claim 31 and its dependent Claims 32–37, 39 and 40 finding that the claims are invalid on their face and therefore the plaintiff cannot base claims of infringement on these claims.

### VI

HCC and CER's next joint argument is that Claims 1, 3–6, 8–16,[7] 18–20, 22–31, and 34–40 read on compositions that may optionally contain a PBT/PBT copolymer and that therefore these claims are invalid. As HCC and CER admit in their reply brief, "[their] only burden on their summary judgment motion based on invalidity is to show by clear and convincing evidence that the claims are invalid." Defendants' May 3, 1988, Combined Reply Brief at 20 (D.I. 45). The Court finds that they have not met this burden.

Simply put, there is an anemic dueling of the experts at this point in the case. The defendants support their contention that clause "b" in these claims permits the PET/PBT copolymer to be present in any amount with bare-faced statements by one of their experts, Ms. Suzanne B. Nelsen. Declaration of Suzanne B. Nelsen, 3/3 Appendix at Tab B, at 2. Likewise, the plaintiffs contend that clause "b" does not permit the copolymer to be present in any significant amount with bare-faced assertions by one of their experts, Mr. Willem F.H. Borman. Second Declaration of Borman, Appendix II to GE's Apr. 13, 1988, Answering Brief at A238 (D.I. 40A).

---

**6.** The Court notes that the plaintiff's argument that the PET/PBT copolymer cannot "come in" through element "B" in claim 31 is irrelevant. *See* GE's Apr. 13, 1988, Answering Brief at 43 (D.I. 40). The term "comprising" permits the addition of *unnamed* and *unrecited* elements to the composition regardless of their effect on the composition's basic and novel characteristics. Thus, just because the copolymer cannot "come in" through element "B" does not mean that it cannot otherwise "come in."

**7.** Although neither the defendants nor the plaintiffs address claims 8–16 in the body of their briefs, the Court notes that in the Summary of Argument section of the Defendant's Opening Brief and in the Statement of Facts of the Plaintiff's Answering Brief these claims do appear. *See* Defendant's Mar. 3, 1988, Opening Brief at 3 (D.I. 30); GE's Apr. 13, 1988, Answering Brief at 25 ¶ 24 (D.I. 40). Thus, the Court's analysis will also cover these claims despite the parties' failure to do so.

As we stated earlier, determining the scope of a claim is a question of law with factual underpinnings. Because the factual underpinnings of this argument are grossly underdeveloped, the Court is unwilling to rule on the validity of the defendants' attack on this motion for summary judgment. Accordingly, we deny the defendants' motion for summary judgment based on this argument.

## VII

Finally, HCC and CER jointly advance the argument that the presence of reinforcing filler materially affects the basic and novel characteristics of the plastics covered by Claims 1–4 and 38, and therefore they do not reach the plastics produced by HCC and CER. Because this is an identical argument to the one urged by HCC earlier, we give it an identical treatment and deny HCC and CER's joint motion for summary judgment based on it.

## CONCLUSION

To summarize, the Court will grant HCC's motion for summary judgment as it pertains to Claims 1–37, 39 and 40 having found, as a matter of law, that HCC has not infringed those claims. The Court will also grant HCC and CER's joint motion for summary judgment on Claims 31–37, 39 and 40 having found that these claims are invalid on their face because, by permitting unlimited amounts of PET/PBT copolymer in the blends, they read on prior art. The Court will deny the remainder of HCC and CER's motions for summary judgment and will await the testimony of expert witnesses at trial to establish the factual underpinnings necessary to determine the scope of the disputed claims in the '394 patent.

An appropriate order will follow.