BIC LEISURE PRODUCTS, INC. and Windglider Fred Ostermann, GmbH, Plaintiffs,

v.

WINDSURFING INTERNATIONAL, INC., Defendant,

and

James R. Drake, Intervenor–Defendant.

No. 83 Civ. 3774 (MEL).

United States District Court, S.D. New York.

Sept. 27, 1991.

Pennie & Edmonds, New York City, for plaintiff BIC Leisure Products, Inc. (Jonathan A. Marshall, Robert M. Kunstadt, John J. Normile, Anneliese M. Schaefer, of counsel).

Harold E. Wurst, Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst, Los Angeles, Cal., for defendant (Michael Sweedler, Darby & Darby, New York City, of counsel).

LASKER, District Judge.

In this patent infringement dispute, following completion of the damages phase of a bifurcated trial BIC Leisure Products, Inc. ("BIC") moves to modify the resulting findings of fact and conclusions of law dated April 8, 1991, 761 F.Supp. 1032, to reflect BIC's defense of absolute intervening rights. Windsurfing International, Inc. ("Windsurfing") opposes, arguing that BIC has waived the defense and that in any event BIC has not proven on the merits that it is entitled to intervening rights to the extent it claims.

For the reasons discussed below, BIC's request for reconsideration of the earlier opinion is granted and damages are reduced to $1,554,164 in lost profits and royalties, plus prejudgment interest to be compounded quarterly.

I.

BIC contends that the sailboards which it had in inventory or which were on order as of March 8, 1983 (the date Windsurfing's reissue patent was issued) qualify for "absolute" intervening rights, and that therefore the April 8, 1991 opinion should be modified to eliminate the award of damages based on sales of those specific sailboards.

Before the merits of BIC's intervening rights claim can be reached, BIC's possible waiver of those rights must be considered.

The "intervening rights" doctrine is established by statute, which provides:

No reissued patent shall abridge or affect the right of any person or his successors in business who made, purchased or used prior to the grant of a reissue anything patented by the reissued patent, to continue the use of, or to sell to others to be used or sold, the specific thing so made, purchased or used, unless the making, using or selling of such thing infringes a valid claim of the reissued patent which was in the original patent. The court before which such matter is in question may provide for the continued manufacture, use or sale of the thing made, purchased or used as specified, or for the manufacture, use or sale of which substantial preparation was made before the grant of the reissue ... to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced before the grant of the reissue.

35 U.S.C. § 252 (1988).

■ In asserting that BIC has waived its defense of intervening rights, Windsurfing relies on a ruling by the Court of Appeals for the Federal Circuit on appeal from the liability and injunctive relief phase of this bifurcated trial. Neither AMF, Inc. (the appellant before the Federal Circuit) nor BIC had raised an intervening rights defense during the liability phase of the trial; indeed, BIC did not include such a defense in its pleadings. Nevertheless, on appeal AMF, like BIC a party found to have infringed Windsurfing's reissue patent and enjoined from future infringement, objected that this Court had failed to consider its intervening rights defense.

The Federal Circuit ruled that "[i]ntervening rights, however, is 'an affirmative defense ... that must be raised at trial,'" *Windsurfing International, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 (Fed.Cir.1986) (quoting *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1388 (Fed.Cir.1983)), and ruled that therefore AMF's failure to put on evidence at trial as to its defense of intervening rights was "fatal" to that defense despite the fact that AMF had included the defense in its pleadings. *Id.* The Court stated, "District courts are under no obligation to consider a defense abandoned at trial. Accordingly, ... we affirm the district court's grant of injunctive relief against AMF and BIC." *Id.*

According to Windsurfing, the Federal Circuit's decision determined that because neither BIC nor AMF raised a defense of intervening rights at the liability phase of the trial, both are barred from doing so at any point. However, I subsequently ruled that AMF had not waived the defense of "absolute" intervening rights because that question was most appropriate for presentation during the damages phase of the bifurcated trial rather than the liability phase, while "[t]he intervening rights defense which AMF argued to the Federal Circuit was an 'equitable' defense by which AMF sought the right to continue to manufacture sailboards." *Windsurfing International, Inc. v. Ostermann GmbH*, 655 F.Supp. 408, 410 (S.D.N.Y.1987) (granting AMF's motion for partial summary judgment precluding award of damages arising from sales of those sailboards which were in its inventory or on order on the date of Windsurfing's reissue patent, March 8, 1983).

■ The grant of AMF's partial summary judgment motion was based on the conclusion that § 252 provided two distinct defenses under the rubric "intervening rights." The first, "absolute" intervening rights, arises under the first sentence from § 252 quoted above. That provision "absolutely protects the right of an infringer of a reissued patent to use or sell specific things which were actually made, purchased or used before the grant of the reissue patent." *Windsurfing International*, 655 F.Supp. at 410; *see also Wayne-Gossard Corp. v. Moretz Hosiery Mills, Inc.*, 539 F.2d 986, 989–90 (4th Cir. 1976); P.J. Federico, *Intervening Rights in Patent Reissues*, 30 Geo.Wash.L.Rev. 603, 632–33 (1961–62); Donald S. Chisum, *Patents* §§ 15.05[2]–15.05[3] (1978). Such absolute intervening rights have been recog-

nized for some time under § 252; one authority noted in 1962–63 that "[s]uch specific things (that were in existence before the date of reissue) are free of the reissue patent and may be used or sold after the date of reissue without regard to the patent." Federico, *supra,* at 632.

By contrast, the doctrine of "equitable" intervening rights, established in the second sentence of § 252 quoted above, "provides for the *continued* manufacture, use or sale of the items in question, if the court deems such continued activity to be equitable." *Windsurfing International,* 655 F.Supp. at 410 (emphasis in original); *see also Wayne–Gossard Corp.,* 539 F.2d at 989–90; Federico, *supra;* and Chisum, *supra,* at 15–70 ("The absolute intervening right is limited to sale or continued use of the 'specific thing.' Other continued activity after reissue is protected only by the equitable intervening rights provision of the second sentence of the second paragraph of Section 252").

Whereas the question the Federal Circuit considered was whether the injunction against AMF's continued use of technology covered by the reissue patent was proper (without discussing the equitable intervening rights claim which AMF pleaded but abandoned at trial), at the damages phase the question presented was what sales infringed Windsurfing's rights and could properly serve as a measure of damages. The inquiry was entirely different, and implicated the absolute intervening rights provision for the first time in this case.

BIC now asserts its defense of absolute intervening rights just as AMF did in its earlier motion for partial summary judgment. BIC argues that, despite its earlier waiver of equitable intervening rights, it enjoys absolute intervening rights under the first sentence quoted above from § 252 to dispose of or use sailboards it had purchased prior to the reissue date.

Windsurfing has again pressed its belief that my earlier distinction between absolute and equitable intervening rights misconstrues the statute and that the Federal Circuit's previous ruling bars any intervening rights defense on the part of BIC. For reasons stated above and articulated in my earlier AMF opinion, I do not agree as to the effect of the earlier appeal on the posture of this case.

Windsurfing argues more fully than it has before that the Federal Circuit does not recognize a distinction between absolute and equitable intervening rights, citing *Seattle Box Co. v. Industrial Crating & Packing Inc.,* 756 F.2d 1574 (Fed.Cir.1985). Its reliance on *Seattle Box* is inapposite. In that case the question was whether intervening rights justified the *post-reissue* construction and use of "bundles" which were the subject of the reissue patent, and which were made from "spacer blocks" which were made or acquired before reissue. 756 F.2d at 1579–80. Because the "bundles" covered by the reissue patent were constructed after the reissue, the Court proceeded under the equitable provisions of the intervening rights doctrine and had no occasion to address the question of absolute intervening rights.

Similarly, Windsurfing's reliance on the unofficially reported Federal Circuit case of *T.J. Smith and Nephew Ltd. v. Parke, Davis & Co.,* 871 F.2d 1098, 10 U.S.P.Q.2d 1946 (Fed.Cir.1989), is unconvincing because the Court did not squarely address the absolute intervening rights question. Moreover, the court did state that "defendants may not be held liable for acts occurring before the date of the reissue," *id.* 871 F.2d 1098, 10 U.S.P.Q.2d at 1947, although it also stated that intervening rights may not automatically be available even if the reissue and original patents are not identical. At any rate the Federal Circuit explicitly identified the opinion as one that "is not citable as precedent."

Accordingly, Windsurfing can prevail on its waiver theory only if BIC is in a different posture than AMF.

Although Windsurfing has never consented to BIC's assertion of intervening rights, throughout the damages phase of trial BIC has clearly asserted its intervening rights defense, and Windsurfing has at all times been aware of BIC's position. Indeed, Windsurfing has actually deposed Armand Desjardins, BIC's witness on inter-

vening rights questions, in 1989, and posed interrogatories to BIC on the issue. Desjardins testified at trial for the purpose of establishing BIC's intervening rights defense and was cross examined by Windsurfing.

Windsurfing objects that regardless of the evidence produced at the damages phase of trial, BIC waived the defense by failing to plead it. Windsurfing is correct that no defense of intervening rights appears in BIC's pleadings. However, as noted above BIC provided ample notice of its intent to prove its intervening rights at trial and at trial did introduce such evidence. Rule 15(b) of the Federal Rules of Civil Procedure provides in part:

If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party. . . .

This provision fits the case at hand. BIC's defense is an important part of the "merits of the action," and Windsurfing was not prejudiced by presentation of the issue because it received ample notice of BIC's intent to rely on and prove the defense.

In light of the foregoing, BIC cannot be said to have waived its defense of absolute intervening rights.

■ The remaining question is whether BIC has established its defense by proving the quantity of sailboards in its inventory or on order as of March 8, 1983, and by establishing that those sailboards were "made, purchased or used prior to the grant of a reissue" within the meaning of the statute.[1]

According to BIC records introduced at trial through the testimony of Armand Desjardins, as of the reissue date of March 8, 1983, BIC had 5,245 boards in inventory. That figure is not in serious dispute.

The principle dispute on the merits is whether 5,625 additional sailboards which BIC had "on order" from a related BIC corporation but which had not yet been delivered to it were "purchased" as of the reissue date within the meaning of § 252. BIC produced a telex dated February 10, 1983 which BIC Leisure Products sent to BIC Marine (an affiliated supplier), and which BIC argues confirms an order of 45 containers of the relevant BIC sailboards containing a total of 5,625 units. DX 504A. The telex states in relevant part:

AS PER TELEPHONE CONVERSATION . . . BIC LEISURE PRODS WILL ACCEPT 45 CONTAINERS OF BIC 250 BOARDS BY THE END OF MARCH AT 125 BOARDS PER CONTAINER. THE TOTAL TO BE SHIPPED IS 5625 BOARDS.

The telex further specified price and other conditions. Although he was not employed by BIC Leisure Products until early 1984, Desjardins testified that it was the normal business practice of BIC Leisure Products to order its annual sailboard requirement by telex from BIC Marine early in the year. Tr. at 1363–64.

I find that the telex of February 10 establishes, in the absence of contrary evidence, that as of the reissue date BIC had made a binding commitment to purchase 5,625 sailboards, and that those sailboards which were on order on the reissue date as result of this telex were "purchased" within the meaning of § 252.

Accordingly, BIC's post-reissue sale of a total of 10,870 sailboards (5,245 of which were in inventory and 5,625 of which were on order) was permissible in the exercise of its absolute intervening rights, and was incorrectly included in the April 8, 1991 computation of damages.

The April 8 opinion at page 8 found BIC's infringing sales to be 7,837 units in 1983 and 8,922 units in 1984. Adjusting those figures to reflect the sales pursuant to BIC's intervening rights, the appropriate

---

1. It is undisputed that none of the relevant claims in Windsurfing's reissue patent were in its original patent, and it has been held that BIC's sailboards did infringe Windsurfing's reissue patent.

837

totals should be zero infringing sales in 1983 and 5,889 in 1984. According to BIC's damages calculations based on these revised infringing sales figures and using the same method adopted in the April 8 opinion, the methodology or accuracy of which Windsurfing has not challenged, Windsurfing sustained no damages for lost profits or royalties in 1983, $473,512 in lost profits in 1984, $116,968 in lost royalties in 1984, and, as previously ruled, $565,587 in lost profits in 1985 and $398,097 in lost royalties for that year. The resulting total of lost profits and royalties, and accordingly the amount of total damages, is $1,554,164.

## II.

 There remains the question of how frequently to compound interest on the award. Windsurfing's previous proposed judgment provides for monthly compounding; BIC objects that no compounding or at most annual compounding are appropriate, especially because the Treasury bills which have been held to be the appropriate benchmark for the award of interest yield their earnings only every three months.

35 U.S.C. § 284 provides for the award of "interest and costs as fixed by the court" as part of the damages for patent infringement, thus investing the court with considerable discretion over the terms under which prejudgment interest is awarded. *See Bio–Rad Laboratories, Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir.1986). As noted in the April 8 opinion, the Federal Circuit recently upheld a District Court's finding in similar circumstances that "[t]he three-month Treasury Bill represents a benchmark as the shortest-term, risk-free investment available to ordinary investors and is a proper basis upon which to compensate [the patentee] for the foregone use of the money." *Allen Archery, Inc. v. Browning Manufacturing Co.*, 898 F.2d 787, 789 (Fed.Cir.1990). The Federal Circuit, while indicating that the issue is largely within the court's discretion, in the same case affirmed the District Court's quarterly compounding of interest. 898 F.2d at 787.

There is no reason to vary from the approach approved in *Allen Archery*. Some compounding is appropriate to approximate the earnings Windsurfing reasonably could have expected on income it lost due to BIC's infringement. However, Windsurfing has offered no reason that it is appropriate to compound the award's interest component more frequently than the three-month maturity length of the Treasury bills provide the basis of Windsurfing's compensation for its foregone use of funds. Accordingly, interest is to be calculated with quarterly compounding.

Submit judgment on notice in the principal amount of $1,554,164 together with prejudgment interest as set forth above.