BIC LEISURE PRODUCTS, INC. and
Windglider Fred Ostermann,
GmbH, Plaintiffs,

v.

WINDSURFING INTERNATIONAL,
INC., Defendant.

No. 83 Civ. 3774(MEL).

United States District Court,
S.D. New York.

March 31, 1994.

Order Denying Reconsideration
May 13, 1994.

Pennie & Edmonds, New York City (Jonathan A. Marshall, Robert M. Kunstadt, John J. Normile, Scott B. Familant, of counsel), for plaintiffs.

Nilsson, Wurst & Green, Los Angeles, CA (Harold E. Wurst, of counsel), Darby & Darby, New York City (David R. Francescani, of counsel), for defendant.

LASKER, District Judge.

BIC Leisure Products, Inc. ("BIC Leisure") moves for entry of final judgment in accordance with the decision of the Federal Circuit on the question of damages in this patent infringement case, *BIC Leisure Prods. v. Windsurfing Intern.*, 1 F.3d 1214 (Fed.Cir.1993), which modified the earlier award of this court, *BIC Leisure Prods. v. Windsurfing Intern.*, 761 F.Supp. 1032, *modified*, 774 F.Supp. 832 (S.D.N.Y.1991).

The parties dispute how the damage award to Windsurfing International, Inc. ("Windsurfing") is to be recalculated in light of the Federal Circuit's opinion; what costs, if any, BIC Leisure is entitled to as a result of an earlier offer which it made to settle the case under Rule 68; and what costs, if any, Windsurfing is entitled to as the prevailing party in this action.

I.

The award of damages for patent infringement is governed by 35 U.S.C. § 284 which provides:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

There are two methods by which damages may be calculated under the statute:

> If the record permits the determination of actual damages, namely, the profits the patentee lost from the infringement, that determination accurately measures the patentee's loss. If actual damages cannot be ascertained, then a reasonable royalty must be determined. The reasonable royalty may be based upon an established royalty, if there is one, or if not upon a hypothetical royalty resulting from arm's length negotiations between a willing licensor and a willing licensee.

*Hanson v. Alpine Valley Ski Area*, 718 F.2d 1075, 1078 (Fed.Cir.1983).

A bench trial was held to establish Windsurfing's actual damages from the infringement. On the basis of the evidence adduced at trial, this court concluded that Windsurfing had established actual damages and, after modification, awarded Windsurfing $1,039,099 in "lost profits" and $516,065 in "lost royalties." The "lost profits" award compensated Windsurfing for the money it would have made from its own manufacture and sale of boards but for BIC Leisure's infringement, that is, if BIC Leisure had not been in the market. The "lost royalties" award compensated Windsurfing for the royalties it would have collected from the sales which its licensees would have made had BIC Leisure not been in the market. These awards were based on the finding that, if BIC Leisure had not been in the market, Windsurfing and its licensees would have divided BIC Leisure's sales among them in accordance with their market shares.

On appeal, the Federal Circuit rejected the award of "lost profits" because it found that:

Assuming BIC [Leisure] had not been in the market, Windsurfing did not show that BIC [Leisure]'s customers would have purchased sailboards from Windsurfing and other manufacturers in proportion to their market shares.

*BIC Leisure Prods. v. Windsurfing Intern.*, 1 F.3d at 1216. The Federal Circuit concluded that:

> The record shows rather that the vast majority of BIC [Leisure]'s customers would have purchased boards from O'Brien and HiFLy [two Windsurfing licensees who sold sailboards resembling BIC Leisure's in the same distribution channels whose prices were closer to BIC Leisure's than were Windsurfing's] if BIC [Leisure]'s boards had not been available.

*Id.* at 1218.

### i. *Lost Royalties*

■ BIC Leisure argues that, since the Federal Circuit rejected this court's finding that Windsurfing and its licensees would have divided BIC Leisure's sales among them in accordance with their market shares (and that finding was the basis for both the award of lost profits and of lost royalties), it also implicitly reversed the award of lost royalties.

While the argument has semantic appeal, it ignores the remand instructions of the Federal Circuit. The Federal Circuit reversed the award of lost profits, but specifically affirmed the lost royalties award. The decision states that:

> With regard to royalties, Windsurfing is entitled to receive lost royalties (on amounts Windsurfing's licensees would have paid "but for" the infringement).... BIC challenges the methodology of the district court in calculating the lost royalties per board, but this court concludes that the chosen methodology was within the court's discretion. On remand the trial court may award damages based upon the lost royalties per board calculation.

*BIC Leisure Prods. v. Windsurfing Intern.*, 1 F.3d at 1219–20. Accordingly, the award to Windsurfing of $516,065 in lost royalties stands. However, that is not the end of the damages calculation.

### ii. *Reasonable Royalties*

The Federal Circuit's decision states that:

> Windsurfing is entitled to receive lost royalties (on amounts Windsurfing's licensees would have paid "but for" the infringement) *and reasonable royalties (on amounts of any other BIC use, if any, of the patented invention).*

*BIC Leisure Prods. v. Windsurfing Intern.*, 1 F.3d at 1219 (emphasis added). We construe this instruction to mean that Windsurfing is entitled to an award of reasonable royalties for those infringing sailboards sold by BIC Leisure which are not reflected in the award of lost royalties. That is, since only a certain percentage of BIC Leisure's infringing sales would have been picked up by Windsurfing's licensees if BIC Leisure had not been in the market (and only that percentage of the infringing sales is reflected in the lost royalties award), Windsurfing is entitled to a reasonable royalties award to account for the remaining infringing sailboard sales.

An award of reasonable royalties "may be based upon an established royalty, if there is one, or if not upon a hypothetical royalty resulting from arm's length negotiations between a willing licensor and a willing licensee." *Hanson v. Alpine Valley Ski Area*, 718 F.2d at 1078. A hypothetical royalty award is based on "a willing-buyer/willing-seller concept, in which a suppositious meeting between the patent owner and the prospective [user] of the infringing [method] is held to negotiate a license agreement." *Id.* at 1079 (quoting *Tektronix v. United States*, 552 F.2d 343, 349, 213 Ct.Cl. 257 (1977)) (alterations in original).

■ Windsurfing maintains that in this case there should be two components to the reasonable royalties award: the established 7.5% running royalty BIC Leisure would have paid as a Windsurfing licensee, and an "entrance fee" which BIC Leisure would have paid to become a Windsurfing licensee in 1984. Windsurfing represents, and it has not been disputed, that most, if not all, of its license agreements contained entrance fee provisions; that these entrance fees varied

between $25,000 and $250,000 depending on the size of the licensee; that Windglider Fred Ostermann G.m.b.H., a company owned by BIC Leisure, paid such an entrance fee of $174,000 to become a Windsurfing licensee in 1983; and that BIC Leisure itself agreed in 1986 to an entrance fee of "about $155,000" to become a licensee under Windsurfing's Canadian patent.

BIC Leisure objects to the inclusion of an entrance fee as a component of Windsurfing's proposed reasonable royalties calculation. BIC Leisure concedes that some of Windsurfing's licensees stipulated to entrance fees, but argues that there are too many unknowns about these arrangements to support an inference that a hypothetical proposed licensee would have agreed to pay such a fee in this case. BIC Leisure also argues that it has been "prejudiced by Windsurfing's failure to raise this issue earlier when discovery could have been taken and witnesses cross-examined to ascertain, for example, whether those fees had in fact been paid or, if so, whether they had been credited against outstanding royalties by some subsequent agreement." (BIC Leisure Letter of March 4, 1994, at 3–4). Finally, BIC Leisure contends that Windsurfing's letters of May 22, 1986 and April 6, 1990, setting forth Windsurfing's theory of damages at different times during the case, make no mention of an entrance fee claim and implies that, as a result, Windsurfing should be estopped from making the claim now.

BIC Leisure's objections are not persuasive. First, the circumstances surrounding the licensing agreements on which Windsurfing places principal reliance—the BIC Leisure agreement in Canada and that of its subsidiary, Ostermann, in the United States—are, of course, known to BIC Leisure and do not require further discovery to permit a comparison with the hypothetical entrance fee Windsurfing argues for in this case.

Moreover, the fact that Windsurfing did not specify an entrance fee in its letters to this court, outlining its damages theory, does not bar it from making the claim in the current, very different posture of the case. Prior to the decision of the Federal Circuit of Aug. 4, 1993 Windsurfing's theory had continually been that it could prove actual damages and that it would not rely on an award of reasonable royalties (whether including an entrance fee or otherwise) as a proxy. *See Hanson v. Alpine Valley Ski Area,* 718 F.2d at 1078 ("If actual damages cannot be ascertained, then a reasonable royalty must be determined"). Accordingly, Windsurfing's May 22, 1986 letter to the court stated that "it is Windsurfing's position that damages greater than a reasonable royalty should be awarded," its April 6, 1990 letter stated that, at trial, "the measure of damages sought by Windsurfing will be the actual damages suffered by Windsurfing common to patent cases" and this court, of course, ultimately held a trial to determine what actual damages Windsurfing could prove.

However, the Federal Circuit's decision has altered the landscape. The decision specifically instructs that "Windsurfing is entitled to receive lost royalties ... and reasonable royalties." *BIC Leisure Prods. v. Windsurfing Intern.,* 1 F.3d at 1219. Since the Federal Circuit's decision has changed the controlling theory of damages, Windsurfing is entitled to suggest that an entrance fee ought to be included in a reasonable royalties award.

I conclude that it is reasonable to infer that in the circumstances of this case BIC Leisure would have paid an entrance fee to become a Windsurfing licensee in the United States in 1984 in an amount at least as large as the fee BIC Leisure paid in 1986 to become a licensee in Canada. Accordingly, an award of reasonable royalties to Windsurfing should include both the running royalty BIC Leisure would have paid as a Windsurfing licensee, and an entrance fee which BIC Leisure would have paid to become a Windsurfing licensee in 1984.

The damages award to Windsurfing is accordingly calculated as follows:

| | |
|---|---|
| Lost Royalties: | $516,065.– |
| Reasonable Royalties: | |
| Total Running Royalty: | $144,177.21 |
| Entrance Fee: | $155,000.– |
| Total: | $815,242.21 |

The running royalty award is based on the following figures:

|  | 1984 | 1985 |
|---|---|---|
| Number of infringing boards sold by BIC Leisure [1] | 5889 | 15936 |
| Average Price [2] | $335.– | $312.– |
| Market Share not accounted for by WSI licensees [3] | 36.2% | 24.3% |
| Royalty Rate [4] | 7.5% | 7.5% |
| Running Royalty | $53,561.93 | $90,615.28 |

## II.

■ Rule 68 of the Federal Rules of Civil Procedure provides that: .

> At any time more than ten days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party.... If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

Fed.R.Civ.P. 68. On February 28, 1986, BIC Leisure made an offer to Windsurfing to allow judgment to be taken against it in this action in the amount of $2,000,000 pursuant to Rule 68. Windsurfing declined to accept the offer. BIC Leisure now seeks to collect from Windsurfing its costs in this action since the date of the offer on the grounds that, according to BIC Leisure, the judgment which will be finally obtained in this action will not be more favorable to Windsurfing than the $2,000,000 offer.

Windsurfing assumes that it will recover "in excess of one million dollars" on the judgment in this case and argues that the final judgment it will obtain will be more favorable than the offer it rejected. Windsurfing contends that the BIC Leisure offer was "virtually worthless" when made because BIC Leisure was an assetless company and that, in any event, the non-monetary relief Windsurfing has obtained since the time of the rejected offer will make the ultimate resolution of the case more favorable to Windsurfing than the earlier offer. The non-monetary benefits to which it refers are:

1. A permanent injunction against BIC [Leisure] and Ostermann until the expiration of the Windsurfing patent in 1987;

2. The Windsurfing patent was finally determined to not have been misused by Windsurfing; and

3. Drake's action ... was resolved completely in Windsurfing's favor.

(Windsurfing Mem. at 18–19).

Windsurfing's claim that the value of the Rule 68 offer was compromised by BIC Leisure's financial condition is unpersuasive because correspondence at the time of the offer shows that Windsurfing knew that BIC Leisure's parent company, BIC Corporation, was prepared to pay whatever damages might be awarded against its subsidiary. In a letter dated August 29, 1985, BIC Corporation's corporate counsel stated that "BIC Corporation will guarantee any damages that BIC Leisure may be required to pay Windsurfing." (Ex. A to Windsurfing's letter to court of Feb. 24, 1994). This letter was sent to the court and all counsel on September 3, 1985 by BIC Leisure's counsel with the comment that BIC Corporation "is presently prepared to issue a Letter of Credit sufficient to cover any reasonable amount of damages which may be finally awarded against BIC Leisure." Id. Indeed, the Judgment in this case of October 24, 1985 provides that:

> 3. BIC Corporation is subject to the jurisdiction of this Court for the purpose of enforcing its guarantee to pay any damages awarded to Windsurfing International, Inc., by reason of infringements by BIC Leisure Products, Inc. Based on the guarantee filed in this Court, BIC Corporation is Ordered to pay to Windsurfing International, Inc. all damages, attorneys' fees and costs, if any, awarded by this Court in the

1. *BIC Leisure Prods. v. Windsurfing Intern.*, 774 F.Supp. at 836; *BIC Leisure Prods. v. Windsurfing Intern.*, 761 F.Supp. at 1040.

2. *BIC Leisure Prods. v. Windsurfing Intern.*, 1 F.3d at 1217.

3. *BIC Leisure Prods. v. Windsurfing Intern.*, 761 F.Supp. at 1040.

4. *Id.* at 1033.

future for infringing activities of BIC Leisure Products, Inc.

Accordingly, Windsurfing had no good reason to believe that it would not have been able to collect on the offer of Judgment of February 28, 1986.

Nor is there merit to Windsurfing's claim that the non-monetary relief it has obtained since the rejected offer will make the final judgment in this case more favorable to Windsurfing than BIC Leisure's Rule 68 offer. First, there is a serious question whether non-monetary relief may be included in computing the relative favorability of offer and judgment under Rule 68; and even if such relief is includable as an element of comparison, it is more than problematic as to how it should be valued. Indeed, at least one court has declined altogether to attempt to quantify non-monetary relief for Rule 68 purposes. *Real v. Continental Group*, 653 F.Supp. 736, 739 (N.D.Cal.1987) ("the better course is to compare monetary awards only"). Moreover, there is no evidence in the record that would support a non-speculative valuation of the non-monetary relief in this case, and, indeed, Windsurfing itself has not attempted to put a dollar value on the non-monetary benefits it has obtained.

In sum, there is no basis for concluding that the final judgment in this case will be more favorable, within the meaning of Rule 68, to Windsurfing than the offer it rejected. Accordingly, BIC Leisure is entitled to its costs in this action from the date of its Rule 68 offer.

### III.

BIC Leisure seeks a total of $310,129.85 in Rule 68 costs which it has itemized. Windsurfing contests BIC Leisure's claims for expert witness fees, photocopying costs and costs on appeal.

#### i. *Expert witness fees*

■ Title 28 U.S.C. § 1920 provides that "[a] judge or clerk of any court of the United States may tax as costs.... [f]ees and disbursements for ... witnesses." However, 28 U.S.C. § 1821(b) limits the witness fees authorized by section 1920 to "an attendance fee of $40 per day for each day's attendance" plus travel time. The Supreme Court has held that, absent express statutory authority to make further award, these provisions define the full extent of a federal court's power to shift the costs of payments to witnesses. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987).

■ BIC Leisure maintains that there is express statutory authority under the Patent Act for shifting expert witness fees beyond what is authorized by § 1821(b). It relies on 35 U.S.C. § 284 which provides that "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement ... and costs as fixed by the court." BIC Leisure cites one decision in which a district court awarded expert witness fees as part of an award of costs to a prevailing patent holder under 35 U.S.C. § 284. *Eldon Indus. v. Vanier Mfg.*, 14 U.S.P.Q.2d 1075, 1990 WL 160220 (C.D.Cal.), *rev'd and vacated on other grounds*, 923 F.2d 869 (Fed.Cir.1990).

However, 35 U.S.C. § 284 does not apply to BIC Leisure's claim for expert witness fees. First, BIC Leisure is the infringer, not the patent holder, and therefore cannot claim costs under this provision. Moreover, the award in *Eldon* turned on the court's finding that the case was "exceptional." However, to show the present case to be "exceptional," BIC Leisure would have to show that Windsurfing had engaged in "vexatious and unwarranted litigation" in pursuing its claim, *Mathis v. Spears*, 857 F.2d 749, 759 (Fed.Cir. 1988)—a showing which BIC Leisure does not and cannot make because Windsurfing has prevailed on its patent infringement claim. Accordingly, BIC Leisure's application for costs under Rule 68 is denied as to its expert witness fees, except as authorized by 28 U.S.C. § 1821(b).

#### ii. *Photocopying costs*

■ Title 28 U.S.C. § 1920 provides that "[a] judge or clerk of any court of the United States may tax as costs ... (4) Fees for exemplification and copies of papers necessarily obtained for use in the case." BIC Leisure has submitted a summary of its

printing and photocopying costs which it maintains were necessarily incurred since the Rule 68 offer and should therefore be awarded pursuant to § 1920(4).

Windsurfing asks us to restrict the award of photocopying costs to exhibits that were admitted into evidence. It relies on this District's Standing Order M–10–468 which it argues limits § 1920(4) and provides that:

> (5) Fees for exemplification, certification and copies of an exhibit if the original was not available and the copy was admitted into evidence ... are taxable. The cost of copies used for the convenience of counsel is not taxable.

The provisions of the Standing Order are not binding on the court. The Standing Order itself states that the items enumerated there are taxable "unless otherwise directed by the assigned Judge or Magistrate" and Windsurfing has not cited any cases in which the costs awardable under 28 U.S.C. § 1920(4) were specifically restricted to satisfy the Standing Order. Nor has Windsurfing attempted to show which of the photocopying costs claimed by BIC Leisure would not be awardable if the Standing Order applied. I conclude that BIC Leisure is entitled to costs for "exemplification and copies of papers necessarily obtained for use in the case" as provided by Section 1920(4). Relying on BIC Leisure's undisputed representation that the costs it has enumerated satisfy that standard, BIC Leisure is awarded $73,362.43 in printing and photocopying costs.

### iii. *Costs on appeal*

■ BIC Leisure's application for Rule 68 costs includes a claim for the filing fee of the Court of Appeals of the Federal Circuit. Windsurfing objects to this claim because the decision of the Federal Circuit states that "each party [is] to bear its own costs," *BIC Leisure Prods. v. Windsurfing Intern.,* 1 F.3d at 1223, and because appeal costs are supposedly outside the scope of Rule 68. BIC Leisure has not responded.

The instructions of the Federal Circuit should be followed and BIC Leisure's application is accordingly denied.

### IV.

■ Finally, Windsurfing seeks reimbursement of its costs as the prevailing party pursuant to Fed.R.Civ.P. 54(d). However, although Windsurfing has prevailed, since the final judgment to be entered is not more favorable to it than the BIC Leisure Rule 68 offer, Windsurfing is only entitled to recover the costs it incurred before the date of that offer. *See Marek v. Chesny,* 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985) (prevailing civil rights litigant was not entitled to costs, including attorney fees, after date of rejection of Rule 68 offer where he ultimately recovered less than the amount offered).

There is no merit to BIC Leisure's argument that Windsurfing's application for costs is untimely because more than thirty days have passed since the most recent decision by the Federal Circuit in this case. Local Rule 11(a), on which BIC Leisure relies, states that "in the case of an appeal by either party, within thirty (30) days after the disposition of the appeal, the party recovering costs shall file with the clerk a request to tax costs." First, since the Federal Circuit remanded the case to this court, it did not "dispose" of the case and, in the absence of a final disposition, Windsurfing could not have sensibly applied for costs. Moreover, Windsurfing has been granted a de facto waiver of the thirty-day rule by the Judgment of this court of September 10, 1985 which reserved jurisdiction of this case to this court for the determination of costs. More generally, if prevailing parties were required to submit a bill of costs before the ultimate resolution of an action, such applications would have to be resolved in piecemeal fashion—a result that is in conflict with the federal bias against piecemeal litigation.

### CONCLUSION

Windsurfing is awarded $815,242.21 in damages, together with pre-judgment interest, and allowable costs incurred before the date of the Rule 68 offer. BIC Leisure is entitled to its allowable costs from the date of the Rule 68 offer.

Submit proposed judgment on notice.

## ORDER ON RECONSIDERATION

LASKER, District Judge.

Windsurfing International, Inc. moves for reconsideration of that portion of the March 31, 1994 Opinion of this Court which held that BIC Leisure Products, Inc. is entitled to its costs in this action from the date of its offer of judgment under Fed.R.Civ.P. 68. *BIC Leisure Prods. v. Windsurfing Intern.*, 850 F.Supp. 224 (S.D.N.Y. 1994).

The March 31, 1994 decision granted BIC Leisure's Rule 68 application because there was "no basis for concluding that the final judgment in this case will be more favorable, within the meaning of Rule 68, to Windsurfing than the offer it rejected." *BIC Leisure Prods. v. Windsurfing Intern.*, 850 F.Supp. at 229. One aspect of that determination was the rejection of Windsurfing's claim that the Rule 68 offer was "virtually worthless" when made because of BIC Leisure's financial condition.

The March 31, 1994 decision held that Windsurfing had no good reason to believe that BIC Leisure's offer was worthless because "Windsurfing knew that BIC Leisure's parent company, BIC Corporation, was prepared to pay whatever damages might be awarded against its subsidiary." *BIC Leisure Prods. v. Windsurfing Intern.*, 850 F.Supp. at 228. That holding was supported by BIC Corporation's letter of August 29, 1985 stating that BIC Corporation would "guarantee any damages that BIC Leisure may be required to pay Windsurfing" and the October 24, 1985 Order of this Court providing specifically that "[b]ased on the guarantee filed in this Court, BIC Corporation is Ordered to pay to Windsurfing International, Inc. all damages, attorneys' fees and costs, if any, awarded by this Court in the future for infringing activities of BIC Leisure Products, Inc."

On the present motion, Windsurfing requests reconsideration of the finding that it "knew that BIC Leisure's parent company, BIC Corporation, was prepared to pay whatever damages might be awarded against its subsidiary." It argues that, to the contrary, Windsurfing had no reason to believe that BIC Corporation intended to stand behind BIC Leisure's offer because BIC Corporation had i) appealed the guarantee provision shortly after it was incorporated in the October 24, 1985 Order and (after the parties agreed to a dismissal of the appeal because it was interlocutory) ii) reserved the right to appeal the guarantee provision again in the future just three weeks before BIC Leisure's Rule 68 offer.

In spite of these facts, however, the October 24, 1985 Order, specifically ordering BIC Corporation to pay its subsidiary's damages, attorneys' fees and costs, gave Windsurfing substantial reason to believe that BIC Corporation would stand behind its obligations. That BIC Corporation had reserved the right to appeal certainly did not insure that it would have been successful on appeal. Moreover, any doubt Windsurfing may have had about whether BIC Corporation was willing to stand behind its subsidiary's obligations could easily, without any risk or expense to Windsurfing, have been resolved by putting that question to the parent corporation. It certainly is reasonable to believe that BIC Corporation would have been willing to guarantee payment by BIC Leisure if, as is the case when a Rule 68 offer is accepted, that would have ended the case.

Finally, Windsurfing's claim that it believed BIC Leisure's Rule 68 offer to be worthless is undermined by the fact that Windsurfing nevertheless pursued the action thereafter for a much larger amount. If Windsurfing had really believed that it would not have been able to collect on the offer, there would have been no point to continuing the action at all. Since Windsurfing did pursue the action, it seems more likely that Windsurfing believed, not that the offer was worthless, but that it could ultimately collect more than the $2,000,000 it declined to accept.

The motion is denied.

Submit proposed judgment on notice.