KAUFMAN COMPANY, INC., Appellant,

v.

LANTECH, INC., Appellee.

Appeal No. 86–770.

United States Court of Appeals, Federal Circuit.

Dec. 16, 1986.

Mark C. Schaffer, Emch, Schaffer, Schaub & Porcello Co., L.P.A., Toledo, Ohio, argued for appellant. With him on the brief were James F. Porcello, Jr. and Gregg W. Emch.

John S. Reed, Greenebaum, Doll & McDonald, Louisville, Ky., argued for appellee. With him on the brief was Hartwell P. Morse, III.

Before RICH, DAVIS, and ARCHER, Circuit Judges.

RICH, Circuit Judge.

This appeal is from the November 12, 1985, judgment of the United States District Court for the Northern District of Ohio in favor of appellee, Lantech, Inc. (Lantech), holding that claims 1–17, 19–20, 22–23, and 28 of patent No. 4,302,920 ('920 patent) entitled "Film Web Drive Stretch Wrapping Apparatus and Method" issued to Patrick and William Lancaster and assigned to Lantech are valid and infringed by appellant Kaufman Company, Inc. (Kaufman). We affirm.

## Background

The '920 patent discloses an apparatus and method for stretch-wrapping loads such as boxes stacked on a pallet with various polymer films. The film is attached to one edge of the load and, as the load is rotated or the film supply rotated around the load, the film is stretched and encases the load. Stretching occurs because the film is pulled over two interconnected rollers which are driven at different speeds *by the film;* the downstream roller rotates faster than the upstream one by virtue of the gears that interconnect them. Stretching is desirable because polyethylene film that is stretched beyond its elasticity point is stronger than that in its unstretched state and because less film is needed to wrap the load.

Kaufman filed a declaratory judgment action against Lantech on December 30, 1981, alleging invalidity of the '902 patent under 35 USC 102 and 103 after receiving notice of infringement from Lantech on December 15, 1981, two weeks after the patent issued on December 1, 1981. The parties stipulated that Kaufman's allegedly infringing activities ended four months later, in April of 1982. Before trial, however, the United States Patent and Trademark Office (PTO) granted Lantech's request for reexamination of the '920 patent.

All of the reexamined claims were found to be patentable over numerous prior art references submitted by Lantech (which Kaufman presented before trial) because, as the examiner stated in the Reasons for Allowance, "[n]one of the cited prior art shows this combination." Notwithstanding that, each of the claims was amended. The examiner stated that "[t]he amendments were made to clarify that the rollers are rotated solely by the moving web and without any other outside source of power and due to the interconnection between the rollers the downstream roller rotates faster than the upstream roller." Amended claim 1 follows: the claim language added during reexamination is emphasized.

1. A process of making a unitary package by wrapping a load comprising the steps of:

a. positioning a roll of stretchable plastic material on a dispenser means adjacent to said load;

b. withdrawing a leading end of said plastic material from said dispenser means through a material web pre-stretching means comprising an upstream roller means and a downstream roller means;

c. holding said plastic material adjacent said load;

d. substantially synchronizing the relative surface speed of said material in said pre-stretching means to the surface speed of said load by relative rotation of the load and said dispensing means causing the film web to be pulled partially around the surfaces of said upstream and downstream roller means of said pre-stretching means, said upstream and downstream roller means being *rotationally* intercon-

nected *so that the downstream roller means rotates faster than the upstream roller means;*

e. rotating said upstream and downstream roller means at different speeds by engaging said roller means with said moving material thereby driving said roller means, *said roller means being driven solely by engagement of said moving material with* the downstream roller means transporting the material at a faster rate of speed than the upstream roller means causing the material web to incur substantial elongation between said upstream and downstream roller means; and

f. wrapping the load with more than one revolution of previously elongated material.

■ Attention at trial focused primarily on two prior art references: the Hutzenlaub patent, No. 3,759,432, considered during reexamination, and a patent issued to Gore, No. 3,953,566, which was not expressly considered by the examiner in either the original prosecution or the reexamination. Other references apparently were considered at trial but only one of these is relied on by Kaufman on appeal, and then only in its reply brief,* a French patent issued to Thimon.

After considering this art and related evidence during trial, the court found that the subject matter of the claims in suit of the '920 patent was not anticipated and concluded that it would not have been obvious to one of ordinary skill in the art at the time it was made.

The court found that Kaufman infringed both the claims in the original patent and those on appeal here and that its infringement was willful, despite the fact that Kaufman filed suit only two weeks after receiving the notice of infringement and stopped infringing four months after the original patent issued. The court found the evidence that Kaufman copied the invention before the patent issued a persuasive factor in the willfulness determination. Although the court did not find the case exceptional, and therefore did not award attorney fees to Lantech, the court exercised its discretion under 35 U.S.C. § 284 and awarded Lantech double damages.

*Issues*

In addition to deciding the usual issue of obviousness of the claimed invention, we are confronted with interpreting one of the relatively new (Dec. 12, 1980) reexamination sections of the Patent Act, 35 U.S.C. § 307. Specifically, we must address the question: to what degree can claims be amended in reexamination before they lose their retroactive effect to the original issuance date? Neither this court, nor, apparently, any other, has had an opportunity to consider this question in the context of an infringement action. Section 307 was added to Title 35 by Pub.L. No. 96–517, § 1, 94 Stat. 3016 (1980).

OPINION

A. *Presumption of Validity*

■ Under 35 U.S.C. § 282, a patent is presumed valid, and one attacking validity has the burden of proving facts supporting a conclusion of invalidity by clear and convincing evidence. Where prior art not considered by the examiner is introduced at trial, the challenger's sustaining of the burden of proof may be facilitated, but the presumption remains the same and the burden remains on the challenger throughout the litigation. *See Jervis B. Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388 n. 4, 222 USPQ 943, 945 & n. 4 (Fed.Cir.1984). Where the patent in suit has been reissued under the provisions of 35 U.S.C. §§ 251 and 252, after consideration by the PTO of art not considered during the original prosecution, the presumption of validity re-

---

* We note here that it is inappropriate for appellants to discuss in their reply brief matters not raised in either of the principal briefs. Reply briefs are to be used to reply to matter raised in the brief of the appellee. Here, Kaufman made no mention of Thimon in its initial brief and thus neither did Lantech. CAFC Rule 13(a), Fed.R.App.P. 28(c).

mains intact, and the challenger's burden of proof imposed by that presumption, as an evidentiary matter, is usually more difficult to sustain. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1364, 220 USPQ 763, 774 (Fed.Cir. 1984). Where, as here, the patent in suit has been reexamined under 35 U.S.C. §§ 301–307, the presumption of validity again remains unaltered. The challenger, as usual, must not only come forward with evidence of a prima facie case of invalidity but ultimately prove facts, under a clear and convincing standard, that support a conclusion that the patent is invalid.

### B. *Obviousness, § 103*

■ The district court stated that the Hutzenlaub prior art patent discloses a web processing apparatus which moves a web from a supply roll through a slitting station and then winds the processed web on a storage roll "while 'maintaining a constant controlled tension on the web in the processing region'—i.e. without stretching the web," or, in other words, wherein "the forces necessary to prestretching are asidiously [sic] avoided." Kaufman argued that with several (substantial) structural changes, Hutzenlaub could be a film-driven pre-stretch device. The court held that "it would not have been obvious to one skilled in the art to take the Hutzenlaub powered device designed to maintain film without changes in tension and make any of the complex changes to it as suggested by Kaufman to produce a film-driven prestretch device."

The district court's findings of fact are not clearly erroneous; it properly found what Hutzenlaub discloses and the differences between it and the claimed invention. The invention claimed in the '920 patent stretches the film before the film is wrapped on the load and does so by driving the stretching rollers solely from the pull of the web, the downstream roller being driven faster than the upstream one. The device in Hutzenlaub maintains constant minimal tension on the web so that the web properly moves through the slitter device and thus does not suggest the claimed apparatus wherein the stretching tension is high in order to stretch the film beyond its yield point before it is wrapped around the load.

Gore, virtually to the exclusion of the other patents, is the most contested prior art reference on appeal. It discloses a process for producing a tetrafluoroethylene polymer (Teflon) sheet material in a porous form, for use in a variety of articles. The polymer in paste form is converted into a shaped article by known methods and is then expanded by simultaneous stretching and heating. One apparatus schematically disclosed in Gore stretches Teflon film by feeding it onto a heated roller where the film is preheated to the temperature at which it will be expanded. The film is then fed onto a second roller which "can be driven" or "is driven," according to the specification, faster than the first roller so that the film is stretched in the gap between the two rollers, thus making the film expand. The relative speeds of the two rollers determine the amount of stretch and thus the amount of expansion of the Teflon film. The specification, however, does not disclose what drives the rollers.

The court found, based on expert testimony and an apparatus demonstration at trial, that the rollers in Gore are not film driven: "If they were film-driven, rollers 16 and 17 could not be controlled to the same peripheral or surface speed as required in Example 5 of the Gore '566 patent unless the stretch level and temperature were controlled or friction were introduced in such a way as to make the entire process unworkable." The court also held that "there is no technological reason that the inventor would have made rollers 15 and 16 film driven, especially in the light of the incredible complications this would have cause [sic] for his specialized purposes." In any event, it is clear from a reading of the Gore patent that nowhere does it disclose or suggest that the stretching rollers, or either of them, are to be driven by the movement of the film through the apparatus rather than by conventional means such as gears, belts, or

chains connected to the roll shafts. As we have said above, it is stated that roller 16, the downstream roller, "can be driven" and that it "is driven," the normal construction of which would be mechanically driven.

Kaufman has shown no clear error in these findings, the argument of its counsel being inadequate to sustain Kaufman's burden on appeal. Where the record contains ample evidence supporting these findings, we are not left with the definite and firm conviction that a mistake has been committed. *See Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Granted, Gore does not expressly disclose how he drives his stretching rollers, but where, as here, there is evidence of record that web-driven rollers would not have been used because of a variety of factors such as temperature, degree of expansion, dwell time, spacing between the rollers, and the very different nature of Teflon film than that used in the '920 patent, we cannot find error in the judgment of the trial court which heard the evidence and saw the demonstration.

With regard to the Thimon reference which Kaufman argues on appeal, apparently as an afterthought, it is clear that we are asked to review it *de novo.* We cannot do that. Kaufman does not once cite *any* support in the record, other than the reference itself, for its proposition about what Thimon discloses or how little it differs from the claimed invention. Moreover, *nowhere* does Kaufman allege clear error in the district court's findings regarding this reference, and we perceive none.

Seeing no reason to disagree with 'the district court's legal conclusion, based upon the findings of fact made as part of the analysis of obviousness under *Graham v. John Deere,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459 (1966), that the claimed invention would not have been obvious to one of ordinary skill in the art at the time it was made, in view of the references as a whole, we affirm the court's holding of nonobviousness. *See Lindemann Machinenfabrik v. American Hoist*

*and Derrick Co.,* 730 F.2d 1452, 221 USPQ 481 (Fed.Cir.1984).

Having found that Kaufman failed to meet its burden of showing obviousness in view of prior art by clear and convincing evidence, we need not consider Lantech's additional rebuttal evidence of nonobviousness.

## C. *Infringement*

Kaufman argues that it is entitled to an absolute intervening right under § 307(b) because none of the reexamination claims are identical to the claims in the original patent. It argues, in effect, that the claims were amended to distinguish over Hutzenlaub and therefore the original claims were invalid and Lantech's reexamination claims do not have effect from the original issuance date. We look to the statutory reexamination provisions and to their legislative history in resolving this issue.

We first note again that Kaufman stopped its allegedly infringing activities four months after the issuance of the original '920 patent and three years before the reexamination certificate issued. Second, we note that the trial court found that Kaufman infringed the original '920 patent claims. That finding cannot be clearly erroneous because Kaufman's expert witness, Overman, admitted at trial that the Kaufman device directly infringed the original claims, which Kaufman acknowledges on appeal.

The court also found, contrary to Overman's testimony, that Kaufman infringed the amended reexamination claims because it correctly interpreted the reexamination claims as reflecting *no substantive difference* from the original claims. We agree with that infringement finding, which is not clearly erroneous.

*Reexamination, 35 U.S.C. § 307*

Section 307, one of the reexamination provisions reads:

§ 307. *Certificate of patentability, unpatentability, and claim cancellation*

(a) In a reexamination proceeding under this chapter, when the time for ap-

peal has expired or any appeal proceeding has terminated, the Commissioner will issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and *incorporating in the patent any proposed amended or new claim determined to be patentable.*

(b) Any proposed amended or new claim determined to be patentable and incorporated into a patent following a reexamination proceeding *will have the same effect as that specified in section 252 of this title for reissued patents on the right of any person who made, purchased, or used anything patented by such proposed amended or new claim,* or who made substantial preparation for the same, *prior to issuance of a certificate* under the provisions of subsection (a) of this section. [Emphasis ours.]

By enacting the reexamination statute, Congress sought "to strengthen investor confidence in the certainty of patent rights by establishing a system of administrative reexamination of doubtful patents" and "without recourse to expensive and lengthy infringement litigation." H.R. Report No. 96–1307, 96th Cong.2d Sess. 3–4, *reprinted in* 1980 U.S.Code Cong. & Ad.News 6460, 6462–63. In order not to require patentees to respond to or participate in unjustified reexaminations and to bar reconsideration of any argument already decided by the PTO during the original examination or an earlier reexamination, Congress intended that reexamination should be granted only upon a showing of a "substantial new question of patentability," based only upon printed publications and patents. H.R. Report at 7, U.S.Code Cong. & Ad.News at 6466. *See In re Etter*, 756 F.2d 852, 860, 225 USPQ 1, 7 (Fed.Cir.1985).

Because all of the claims of the reexamined '920 patent are now, in the language of § 307(b), in the category of a "proposed amended or new claim determined to be patentable and incorporated following a reexamination proceeding" those claims "have the same effect as that specified in § 252 of this title for reissued patents...." We therefore examine § 252 and related cases.

### *i. Section 252 First Paragraph*

Section 252 consists of two paragraphs which read, insofar as relevant, as follows:

The surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims or the original and reissued patents are identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.

No reissued patent shall abridge or affect the right of any person or his successors in business who made, purchased or used prior to the grant of a reissue anything patented by the reissued patent, to continue the use of, or to sell to others to be used or sold, the specific thing so made, purchased or used, *unless the making, using or selling of such thing infringes a valid claim of the reissued patent which was in the original patent.* [Emphasis ours.]

The first paragraph makes clear that if the claims in the original and reissued patents are "identical," the reissued patent is deemed to have effect from the date of the original patent. If not, then the patentee has *no* rights to enforce before the date of reissue because the original patent was surrendered and is dead. *Seattle Box Co. v. Industrial Crating and Packing, Inc.*, 731 F.2d 818, 827, 221 USPQ 568, 574 (Fed. Cir.1984). This is *not*, however, so-called "intervening rights" set out in the second paragraph of § 252, explained infra.

The issue in *Seattle Box* was Congress' intended meaning of the word "identical." It held that " 'identical' means *at most* 'without substantive change.' " *Seattle Box*, 731 F.2d at 828, 221 USPQ at 575. Other courts, *see Austin v. Marco Dental Products, Inc.*, 560 F.2d 966, 195 USPQ 529 (9th Cir.1977), *cert. denied*, 435 U.S. 918, 98 S.Ct. 1477, 55 L.Ed.2d 511 (1978) and *Akron Brass Co. v. Elkhart Brass Manufacturing Co.*, 353 F.2d 704, 147 USPQ 301 (7th Cir.1965), have held that "identical," within the meaning of § 252 first paragraph, means "without substantive change." We adopt that definition and thus are faced with the specific question whether the amended reexamination claims are the original claims "without substantive change." We hold that they are.

The trial court found that the amendments made during reexamination

> did not expand, narrow or otherwise alter the meaning or scope of the claims in the original '920 patent. The claims ... were amended without substantive change ... and the amendments were made, as stated by the examiner, simply to further clarify the completely sufficient language used in the original claims to describe the manner in which the interconnected rollers are driven by the film web. The claimed invention is the same in the reexamined claims of the '920 patent as in the original claims....

The district court correctly interpreted the claims of the original and reexamination patents and properly determined that the claims in the reexamination patent and their counterparts in the original patent are "identical" within the meaning of § 252. Without quoting the language of each of the claims in suit, it is sufficient to state that the amendments in each of the claims in the reexamination patent were the equivalent of those in claim one, quoted supra, with regard to their substance and effect. The reissue claims merely clarify that the web drives the rollers and that the downstream roller rotates faster than the upstream one as a result of the rotational interconnection between the two. The language to both these effects was already present in the specification and in the original claims themselves, as the court stated, almost to the point, in our minds, that some of the amendments made were unnecessary and redundant with language already in the claims. Because the reexamination claims are without substantive change from the original claims and therefore are legally "identical" within the meaning of § 252, Lantech can recover damages for infringing activities performed before the date of the reexamination certificate, specifically, the four months from December, 1981 to April, 1982. *See Seattle Box*, supra. All the reexamination claims have continuous effect from the date of the original patent. See § 252 para. 1.

### ii. Section 252 Second Paragraph: Intervening Rights

The first sentence of the second paragraph of § 252 provides, inter alia, that "No reissued patent shall abridge or affect the right of any person ... who made ... or used prior to the grant of reissue anything patented by the reissue patent, to continue the use of ... the specific thing so made ... or used, *unless* the making [or] using ... of such thing infringes a valid claim of the reissued patent *which was in the original patent*." [Emphasis added.]

This court, in *Seattle Box*, stated with respect to that provision:

> The only question to ask under this test is whether claims of the original patent which are repeated in the reissue patent are infringed. Section 252 assumes that a patentee having valid claims in a patent will retain those claims in the reissued patent. If valid claims in the original patent appear unaltered in the reissue patent, the doctrine of intervening rights affords no protection to the alleged infringer.

731 F.2d at 830, 221 USPQ at 576 (see also this court's second opinion in *Seattle Box* at 756 F.2d 1574, 1579 n. 6, 225 USPQ 357, 361 n. 6 (Fed.Cir.1985)). That court then

noted that because it had determined that the reissue claims in that case were *substantively* different from the original claims, the infringer could raise a defense of intervening rights.

■ We held above that the claims of the reexamination patent in this case are not substantively different from those in the original patent and thus this case falls within the *exception* to the grant of intervening rights accorded by § 252 second paragraph—that the infringer is entitled to intervening rights *"unless the making, using or selling of such thing infringes a valid claim of the reissued patent which was in the original patent"* (emphasis added). Here, we have concluded that each of the reexamination claims is valid and was in the original patent and therefore Kaufman is not entitled to intervening rights. *See Cohen v. United States,* 487 F.2d 525, 179 USPQ 859 (Ct.Cl.1973) (intervening rights apply only if the infringer did not infringe a claim of the original patent), *cited with approval in Seattle Box,* 731 F.2d at 830, 221 USPQ at 577.

■ Kaufman argued that *any* amendment made during the reexamination proceeding is substantive and therefore automatically entitles the infringer to an intervening right because the reexamination claims cannot then, as a matter of law, be the same as the original ones. It argues that because reexamination is granted only upon a showing of a "substantial new question of patentability," *all* amendments are deemed substantial and therefore it is distinguishable from reissue proceedings where minor as well as substantive amendments to the claims may be made (including claim broadening). Kaufman goes so far as to argue that if, during reexamination a typographical or some other minor error is discovered, that a reissue proceeding must be instituted to correct that. This argument is not only so hypertechnical as to border on nonsense but is clearly beyond Congress' intent.

First, the legislative history of the reexamination provision in no way supports such a restrictive view of this provision.

The substantial new question standard, as noted above, was incorporated to prevent abuse and harassment of patentees, not to manifest a Congressional intent that *any* amendment in the reexamination proceedings must be deemed substantial and therefore trigger an intervening right. Congress would not have expressly incorporated § 252 into § 307 if it intended what Kaufman argues. Indeed, the cases have consistently construed the second paragraph of § 252 as requiring that a substantive change be made to the claims in reissue before an infringer is entitled to an intervening right. *See, e.g., Seattle Box,* supra; *Kelley Manufacturing Co. v. Lilliston Corp.,* 636 F.2d 919, 213 USPQ 29 (4th Cir.1980); *Austin v. Marco Dental Products,* supra; *Akron Brass Co. v. Elkhart Brass,* supra; *Cohen v. United States,* supra; *Slimfold Manufacturing Co. v. Kinkhead Properties, Inc.,* 626 F.Supp. 493, 229 USPQ 298 (N.D.Ga.1985); *Johnston v. Textron, Inc.,* 579 F.Supp. 783, 222 USPQ 160 (D.R.I.), *aff'd mem.,* 758 F.2d 666 (Fed.Cir.1984).

Second, Kaufman's reliance on the language of § 2258 of the MPEP to somehow illuminate the question of what Congress' intent was is unavailing. Where the MPEP states that other "matters" must be raised in a reissue proceeding, reference is to questions of validity other than those that arise where printed publications and patents are relied upon, not to questions involving minor amendments such as inserting an antecedent basis or correcting a typographical error.

### D. *Willful Infringement*

The court found that Kaufman faithfully copied the claimed invention, took an untenable position regarding validity of the patent, and presented a frivolous defense of noninfringement and therefore that Kaufman's infringement was willful, intentional and deliberate. The court doubled the amount of damages yet to be assessed.

Kaufman argues that the allegedly improper copying took place *before* the patent was issued and therefore cannot be considered, citing *State Industries v. A.O.*

*Smith*, 751 F.2d 1226, 224 USPQ 418 (Fed. Cir.1985), that its device uses a different roller interconnection, that the infringement ceased only four months after the '920 patent issued, and that it has been represented by counsel since the time it brought this declaratory judgment action, two weeks after receiving the notice of infringement.

■ The willfulness *vel non* of infringement is determined by reviewing the totality of the circumstances, *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 220 USPQ 490 (Fed.Cir.1983), and is a finding of fact reviewable under the clearly erroneous standard. The court's finding of willful infringement was not clear error, and the award of double damages was not an abuse of discretion because of the totality of the following circumstances, each of which is the subject of a finding by the court.

(1) On a number of occasions, Mr. Kaufman, president of Kaufman, indicated to Patrick Lancaster and to Charles Sgro, Lantech's vice president of marketing, that he would copy any machine that his customers requested, regardless of whether or not a patent was issued; (2) Mr. Kaufman and customers of Kaufman frequented Lantech's booth at a 1980 trade show, were asked to leave but maintained a vigil from the aisle where they could view the operation of Lantech's machine; (3) Kaufman tested a geared device as used in the invention and then developed the cone and belt system to imitate the former; (4) Kaufman admitted that the difference between its machine and the claimed invention is the type of gearing in the roller interconnection, and Kaufman does not dispute the finding that its roller drive is the equivalent of Lantech's (the court found that the level of stretch with the claimed invention is changed by adjusting gear ratios and on Kaufman's by moving the belt from groove to groove on the cone); (5) the claims do not limit the interconnection to a specific structure (our conclusion of law); (6) Kaufman received notice of infringement two weeks after the patent issued; (7) although Kaufman filed suit two weeks thereafter, it continued to infringe until roughly four months after that, *see Power Lift, Inc. v. Lang Tools, Inc.*, 774 F.2d 478, 227 USPQ 435 (Fed.Cir.1985); *State Industries*, supra, at which time it was ready to market a noninfringing device; and (8) Kaufman's defense of noninfringement was weak at best, except to the extent that its interpretation of § 307 had merit.

■ We add further that, although Kaufman retained an attorney and sued Lantech shortly after receiving notice of infringement, there is no evidence that Kaufman received from that attorney information that would provide a reasonable basis for Kaufman's believing that it had a right to continue the allegedly infringing acts. *Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 221 USPQ 1 (Fed.Cir.1984) (citing with approval *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 219 USPQ 377 (Fed.Cir.1983)). *See also Pacific Furniture Manufacturing Co. v. Preview Furniture Corp.*, 800 F.2d 1111, 231 USPQ 67 (Fed.Cir.1986). The mere fact that Kaufman brought suit is not evidence that there was such a reasonable basis.

### Conclusion

The judgment of the district court holding the patent valid and infringed is *affirmed* in all respects.

AFFIRMED.