**SRAM CORPORATION,**
**Plaintiff–Appellee,**

v.

**AD–II ENGINEERING, INC.,**
**Defendant–Appellant.**

No. 03–1458.

United States Court of Appeals,
Federal Circuit.

DECIDED: Aug. 18, 2004.

Rehearing and Rehearing En Banc
Denied Sept. 24, 2004.

Michael T. Brady, Miller & Chevalier, Washington, DC, James T. Malysiak, Freeman, Freeman, Chicago, IL, for Defendant-Appellant.

Richard B. Walsh, Jr., Lewis & Rice & Fingersh, L.C., Frank B. Janoski, Keith J. Grady, Michael J. Hickey, Lewis & Rice, St. Louis, MO, for Plaintiff-Appellee.

Before MAYER, Chief Judge, BRYSON, and LINN, Circuit Judges.

### Opinion

BRYSON, Circuit Judge.

AD–II Engineering, Inc., appeals from a judgment of the United States District Court for the Northern District of Illinois holding that it infringed United States Patent No. 5,662,000 ("the '000 patent") owned by SRAM Corporation. *SRAM Corp. v. AD–II Eng'g, Inc.,* 252 F.Supp.2d 712 (N.D.Ill.2003). We hold that during the prosecution of the '000 patent SRAM disclaimed patent protection for certain features that are found in AD–II's accused device. We therefore *reverse* the judgment of infringement.

The '000 patent, entitled "Detent Spring for Rotatable Actuating System," relates to a bicycle gear shifter with a rotatable hand grip. According to the invention, a support member is attached to the bicycle handlebar, and springs and a rotatable grip with detent notches in it are placed around the support member. The gear is shifted when the grip is rotated and the spring settles in one of the detent positions corresponding to the desired gear.

SRAM alleges that AD–II infringed independent claim 7 and dependent claim 8 of the '000 patent, both literally and under the doctrine of equivalents. Claim 7 contains the only disputed limitations. It recites:

A rotatable handgrip actuating system for releasing or pulling a tensioned cable, the system comprising:

a support member having a generally cylindrical outer surface;

a grip disposed over said generally cylindrical outer surface of said support member and rotatable relative thereto in a first direction and in a second direction opposite said first direction, a generally cylindrical inner surface of said grip facing said outer surface of said support member, one of said inner surface and said outer surface having a plurality of detent positions formed therein; and

a spring metal detent spring disposed between said grip and said support member and engageable with one of said detent positions, said detent spring providing a first resistance against being forced out of said one detent position when said grip is rotated with respect to said support member in said first direction, said detent spring providing a second resistance against being forced out of said one detent position when said grip is rotated relative to said support member in said second direction, said

second resistance being greater than said first resistance, the difference between the first and second resistances due at least in part to the shape of the detent spring.

AD–II manufactures the Microshift, also a rotatable gear shifter. According to AD–II, the differences between the Microshift and the invention claimed in the '000 patent are that the Microshift has a non-stationary, rotating support member; that the Microshift relies on different types of forces than SRAM's invention; and that the Microshift does not have detent notches on the inner surface of the grip, but instead has them on the housing itself.

AD–II's principal argument on appeal is that during prosecution of the '000 patent SRAM disclaimed any gear shifter having a rotatable support member. As originally filed, the application that matured into the '000 patent referred to gear shifters having "two principal components which are rotatable with respect to each other." The examiner rejected most of the claims of the application for indefiniteness and several for anticipation.

In response, the applicants filed an amendment on December 6, 1996, which amended the application extensively. A number of the changes were made "to correct a description of how the shift actuating system operates" and thereby "to correct an incorrect description of the operation of the device." In particular, the applicants explained that in their invention the mandrel and spring-retaining or support member are affixed to the handlebar of the bicycle and that the handgrip, to which is affixed the wall containing the detents, is rotated around the mandrel. Hence, the applicants wrote, it is the wall and handgrip that are rotated, "and any passage describing the rotation of mandrel 20 or spring-retaining member 40 is incorrect."

■ SRAM argues that the December 6, 1996, amendments merely provided an antecedent basis for the term "support member," and should not have the same limiting effect as an amendment to the scope of the claims. *See, e.g., Kaufman Co. v. Lantech, Inc.,* 807 F.2d 970, 978 (Fed.Cir.1986) (noting that "inserting an antecedent basis or correcting a typographical error" are "minor amendments"). The December 6, 1996, amendments, however, did much more than provide an antecedent basis for one of the terms used in the claims. The statement that "any passage describing the rotation of [the support, or spring-retaining member] is incorrect," which SRAM characterizes as merely "attorney remarks," is an unqualified disclaimer of subject matter. By stating that "any passage" in the application that describes the spring-retaining member as rotating is "incorrect," the applicants have made clear that their invention is limited to gear-shifting mechanisms in which the support or spring-retaining member does not rotate and that they have disclaimed any gear-shifting mechanism in which the support or spring-retaining member rotates. In light of that disclaimer, the patent cannot be construed to read on any device in which the support or spring-retaining member rotates, including the accused AD–II device.

■ SRAM does not dispute that the disclaimer has the effect of excluding the use of rotating support members in the embodiments to which the disclaimer applies. SRAM argues, however, that the disclaimer was directed only to certain preferred embodiments of the invention, and not to the invention in general. In support of that argument, SRAM contends that the patent identifies more than two embodiments; according to SRAM, the

disclaimer applied only to the first two embodiments and not to the others.

We reject that argument. SRAM's argument that its disclaimer of a rotatable support member refers to only two of the preferred embodiments in the application is based on a mischaracterization of the specification of the '000 patent. As explained in the patent, the first embodiment of the rotatable grip actuating system is depicted in figures 3 and 4. *See* '000 patent, col. 3, ll. 42–45. A second embodiment of the rotatable grip actuating system is depicted in figures 5 and 6. The patent explains that the second embodiment differs from the first only with respect to the shape of the detents. *Id.,* col. 4, ll. 46–48.

The specification describes three other embodiments of the invention, one depicted in figures 8 and 9, one depicted in figure 10, and one depicted in figure 11. *See* '000 patent, col. 6, ll. 31–32, 50–52; col. 7, ll. 8–9. As both the specification and the figures make clear, however, those embodiments pertain only to differences in the shape of the spring. The portion of the specification that addresses the additional embodiments makes this point clear in several ways. It discusses the additional embodiments only in the section of the specification devoted to a description of the detent spring and detent notches of the invention, *see id.,* col. 6, line 31, through col. 7, line 25; it refers to the third embodiment as the "third embodiment of the spring of this invention," *id.,* col. 6, ll. 31–32; and it alludes to the first two embodiments of the invention by reference only to the different shape of the spring in those two embodiments, *see id.,* col. 6, ll. 32–35, 52–54; col. 7, ll. 10–11. Thus, the only differences among the various embodiments described in the patent are differences in the shape of the detent notches and the shape of the spring. As

to the structure of other features of the invention, including whether the support member rotates, there is no difference among the various embodiments described in the specification. Indeed, the applicants made this clear in their December 6, 1996, amendment when they stated that the "basic operation of the invention remains the same between" the embodiments shown in figures 4 and 8, and those shown in figures 5 and 6. Again, the only difference between those two embodiments relates to the shape of the springs and the shape of the detent notches.

In arguing that the specification describes a third embodiment of the rotatable grip shifter and that the third embodiment features a rotating spring retaining member, SRAM relies on a reference in the specification to the spring retaining member being "rotated in either direction with respect to the wall 56." '000 patent, col. 6, ll. 46–47. That statement is not sufficient to establish that there is a third embodiment of the invention and that the third embodiment has a rotating spring retaining member, for several reasons. First, the spring retaining member and the wall 56 rotate "with respect to" each other regardless of which is fixed; the quoted statement therefore does not indicate that it is the wall that is fixed and the spring retaining member that rotates. Second, even if the quoted language constituted a clear statement that the spring retaining member rotated rather than being fixed with respect to the handlebar, that interpretation would be overridden by the disclaimer in the prosecution history that "any passage [of the specification] describing the rotation of mandrel 20 or spring-retaining member 40 is incorrect." Finally, the patent's description of the operation of the device, including the figures, consistently shows that the spring-retaining member is fixed with respect to the handlebar and does not show any de-

vice that operates by having the spring-retaining member rotate. There is therefore no support in the written description that shows how the device would work if the spring-retaining member were allowed to rotate, and no indication that the one ambiguous statement in the specification on which SRAM relies was intended to represent a separate embodiment of the invention entirely different from the embodiment described in the rest of the specification and inconsistent with the position taken by the applicants in describing their invention during prosecution.

In sum, we hold that the applicants disclaimed any embodiment of their invention in which the spring retaining means, or support member, rotates. Based on that clear disclaimer, the patent cannot be construed to apply to any device in which the support member rotates, either as a matter of literal infringement or infringement under the doctrine of equivalents. Accordingly we reverse the judgment of the district court and remand the case for further proceedings.

MAYER, Chief Judge, dissenting.

The court has taken words out of context, imported a limitation from the written description into the claims, and crafted a surprising result. The court's biggest mistake is its failure to read SRAM's December 6, 1996 amendment with care. The court hints that the December 6, 1996 amendment was a response to an occasion where "[t]he patent examiner rejected most of the claims of the application for indefiniteness and several for anticipation." *Ante*, at 400. The flaw here, however, is that *most* is not *all*; the only reason SRAM amended "support member" was to provide an antecedent basis—not because the term was rejected because of a prior art reference or any other substantive reason. The same is true for SRAM's amendment of figures 3, 4, 5 and 6, which were amended to provide additional clarity, not to overcome a prior art or obviousness type rejection.

SRAM amended figures 3, 4, 5 and 6, which depict two embodiments of the gear shifter, by removing the arrows that indicated that the "spring retaining member" rotates. The changes, as cited by the court, "to correct a description of how the shift actuating system operates" and thereby "to correct an incorrect description of the operation of the device," *ante*, at 400, were not in reference to the claim, but only to the drawings of the two embodiments. The court has simply taken a circuitous route, by using an embodiment's prosecution history, to force an embodiment to limit a claim: the meaning of "support member" by way of the amendment pertaining to the "spring retaining member."

The court also points to the December 6, 1996, amendment's explanation that "any passage describing the rotation of mandrel 20 or spring-retaining member 40 is incorrect." The court presumes that this disclaimer was written to the invention as a whole; however, this notion is clearly wrong. The changes to the specification were restricted to col. 5, l. 21 through col. 6, l. 3, the section of the specification referring to figures 5 and 6. Thus, this disclaimer only applied to the embodiments described in one discrete section of the patent.

There also is evidence in the written description that SRAM understood that the support member could rotate. It states, "By thus preventing the lifting of the second end 114 of the spring when the spring retaining member 40 is rotated in either direction with respect to the wall 56, a force applied by the detent 110 as it moves in and out of the notches 50, 52 and 54 may be more precisely controlled."

Patent '000, col. 6, ll. 44–49. Thus, while the support member shown in figures 3, 4, 5 and 6 does not rotate, there is evidence in the specification that the support member may rotate and the presence of a third embodiment, albeit of the spring, which shows a rotating support member. *See Bell Atl. Network Servs. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1270 (Fed.Cir.2001) ("the meaning of a claim term [is] not limited by its specific usage in the written description of a preferred embodiment"); *N. Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1291 (Fed.Cir. 2000) ("the '[v]aried use of a disputed term in the written description demonstrates the breadth of the term rather than providing a limited definition'" (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996) (looking to the words of the claims in order to define the scope of an invention))). The court rejects this evidence, implicitly holding that the description of an invention made in the context of an embodiment that encompasses anything less than the entire invention is meaningless. I could find no support for this proposition and the court cites none.

Even the trial court warned of the need to read the amendment closely. *SRAM Corp. v. AD–II Eng'g, Inc.*, 155 F.Supp.2d 826, 834 (N.D.Ill.2001). After acknowledging "[a]t first glance" that AD–II's "argument is appealing in its simplicity," the trial court stated that "[c]loser examination reveals certain flaws with such a simplistic view." *Id.* The facts have not changed; AD–II still asks this court to "either ignore the third preferred embodiment or construe the patent as not reading upon it." *Id.* The law also has not changed; an interpretation that defines the invention in a manner that excludes an embodiment is rarely, if ever, correct and requires highly persuasive evidentiary support not found in this case. *See Vitronics*

*Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed.Cir.1996). It appears that the court has fallen prey to AD–II's not so subtle attempt to conflate the PTO's substantive bases for rejection with the more routine amendments. This court, like the court did below, should have found "no evidence in the prosecution history that the applicant disclaimed a rotatable support member because all references in the amendment to 'stationary' were made with specific respect to the description of the first two preferred embodiments only, in which the support member is stationary." *SRAM Corp. v. AD–II Eng'g, Inc.*, 252 F.Supp.2d 712, 716 (N.D.Ill.2003) (referring to that court's earlier decision in *SRAM Corp.*, 155 F.Supp.2d at 833–34).