**ANDERSEN CORP.**

v.

**PELLA CORP. and W.L. Gore & Associates, Inc.**

**No. 05–CV–824 (JRM/FLN).**

United States District Court,
D. Minnesota.

July 31, 2007.

Becky R. Thorson, Ronald J. Schutz, Busola A. Akinwale, Mary E. Kiedrowski, Robins Kaplan Miller & Ciresi LLP, Minneapolis, MN, Ana D. Johnson, for Andersen Corp.

Calvin L. Litsey, Chad Drown, James W. Poradek, Kevin P. Wagner, Nina Y. Wang, Faegre & Benson, Lori D. Semke, William J. Tipping, Flynn Gaskins & Bennett, Minneapolis, MN, Allan M. Wheatcraft, W.L. Gore & Associates, Inc., Newark, DE, Christopher K. Hu, David H. Pfeffer, Jessica L. Rando, John T. Gallagher, Morgan & Finnegan, New York City, for Pella Corp. and W.L. Gore & Associates, Inc.

## ORDER

ROSENBAUM, Chief Judge.

Plaintiff, Andersen Corp. ("Andersen"), accuses defendants Pella Corp. ("Pella") and W.L. Gore & Associates, Inc. ("Gore"), of infringing its patent covering reduced visibility window screens. Defendants reply that Andersen's patent is invalid for obviousness. The Court agrees, and in light of *KSR Int'l Co. v. Teleflex, Inc.,* — U.S. ——, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007), grants defendants' motion for summary judgment.

I. *Background*

Window screens, which allow air to move while barring insects, are not new inventions. And since there have been window screens, manufacturers have had a continuing interest in making them less visible. Andersen, a window screen manufacturer, assembled a team to design reduced visibility insect screens. During their search for the right material, the team members scoured the internet and came upon the TWP, Inc., website. TWP manufactures a variety of screen/mesh products, some of which it actually advertises as window screens.

Relevant to this case, TWP's website displayed a fine, highly transparent stainless steel mesh (referred to as "TWP"), offered for use as electromagnetic shielding. Members of the Andersen team obtained some of this material, and after painting it black, found it appeared nearly invisible when used as window screening. The idea of putting this fine screen mesh into a fenestration unit—a window or door frame—is the essence of the patent in suit.

Andersen attempted to patent its reduced visibility insect screen, but the Patent Examiner initially denied its application. The Examiner considered Andersen's claims obvious in light of the pre-existing TWP material, in combination with a Japanese patent disclosing darkening to make screening less visible. Andersen, thereafter, amended its application to include the limitation "in a fenestration unit that permits ventilation there through." With this modification, the U.S. Patent and Trademark Office issued Andersen U.S. Patent No. 6,880,612 ("'612 patent").

Andersen now seeks to prevent Pella and Gore from producing and marketing Pella's Vivid View insect screen, claiming it infringes the '612 patent. In particular, Andersen contends defendants' reduced

visibility screen infringes independant claims 22 and 76, and dependant claims 12, 23–29, 55, 59, and 65. Exemplary independent Claim 76 recites:

> An insect screening material in a frame removably attached to a fenestration unit that permits ventilation there through, having a reduced visibility, comprising a plurality of screen elements having a diameter of 0.007 inch or less, the screen elements having a tensile strength greater than 5500 psi, wherein the screening has a transmittance of light of at least .75 and a reflectance of light of .04 or less.[1]

(Def.'s Ex. 1 at 34.) The Court has construed the term "insect screening" in accord with *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), to mean "a mesh of thin linear elements permitting ventilation while excluding insects." (Claim Construction Order 3, July 7, 2006).

The Court initially entertained cross-motions for summary judgment. These were denied, by Order, dated September 28, 2006. Subsequent thereto, however, the United States Supreme Court decided *KSR Int'l Co. v. Teleflex, Inc.*, — U.S. ——, 127 S.Ct. 1727, 167 L.Ed.2d 705, which clarified the standard for determining obviousness in patent litigation.

Citing the *KSR* decision, defendants moved to re-open their summary judgment motion, arguing the '612 patent is invalid as obvious. The Court permitted rebriefing on the question of obviousness in light of *KSR*. After a review of the briefs and further argument, the Court grants defendants' motion for summary judgment.

## II. *Analysis*

### A. *Summary Judgment Standard*

Summary judgment is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. *See Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505; *see also Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1164 (Fed.Cir.1993). In its recent decision, the Supreme Court stated that, while a finding of obviousness is based on factual findings, "[t]he ultimate judgment of obviousness is a legal determination." *KSR*, 127 S.Ct. at 1745.

### B. *Obviousness*

■ An issued patent is presumed valid under 35 U.S.C. § 282. Thus, the party challenging a patent bears the burden of showing invalidity by clear and convincing evidence. *Kaufman Co., Inc. v. Lantech, Inc.*, 807 F.2d 970, 973 (Fed.Cir.1986). But a patent may not issue if, in light of the prior art, the invention is obvious to one having ordinary skill in the art to which the patent pertains. 35 U.S.C. § 103(a).

■■ When considering whether a patent is obvious, a court must analyze the factors delineated in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). *KSR*, 127 S.Ct. at 1734. These are: (1) the

---

1. Independant claim 22 is nearly identical to claim 76, without the limitation "in a frame

removably attached to" a fenestration unit.

scope and content of the prior art; (2) the differences between the prior art and claimed invention; and (3) the level of ordinary skill in the art. *Graham,* 383 U.S. at 17–18, 86 S.Ct. 684; *KSR,* 127 S.Ct. at 1734. If defendants establish a prima facie showing of obviousness under these primary factors, the court then weighs secondary considerations of nonobviousness, such as commercial success, long felt but unmet need, failure of others, and unexpected results. *Id.; Ormco Corp. v. Align Tech., Inc.,* 463 F.3d 1299, 1311 (Fed.Cir.2006). *KSR* directed courts facing this question to reject a "rigid approach," in favor of an "expansive and flexible approach" using "common sense" when assessing whether an invention would have been obvious to a person of ordinary skill in the art. *KSR,* 127 S.Ct. at 1739, 1742–43.

### 1. *Primary Obviousness Factors*

Defendants claim the pre-existing TWP screen includes nearly every aspect of the '612 patent's asserted claims, and Andersen's use and modification of the TWP material would have been obvious to one of ordinary skill in the art of insect screen design. For the purposes of this motion, the parties agree that one of ordinary skill in the pertinent art is someone who manufactures insect screens with no understanding of optics and physics.

Window or door screens are, and have been, common consumer goods for many years. The '612 patent's claimed innovation is the simple incorporation of delicate TWP screening into an insect screen frame. This is the heart of Andersen's claimed invention. TWP has been available on the internet, and was in use well before the application for the patent in

suit. As such, this material is a major portion of, and was cited as, prior art in this patent's application.

The issued patent contains only three limitations not found in the TWP material itself: reflectance value, bonding, and placement in a window frame. (Pl.'s Supp. Br. 5.) TWP screening was extensively discussed in the '612 patent specification as the preferred stainless steel embodiment. Given this information, the Patent Examiner initially rejected the application. It was only after the Examiner added the limitation "in a fenestration unit that permits ventilation there through" that the patent issued.[2]

Thus, in the face of an obviousness challenge, the Court considers: would an insect screen manufacturer of ordinary skill have found it obvious to use the TWP screening material, decrease its reflectance value, bond it, and place it in a window frame? The answer, plain and simple is "Yes."

"The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR,* 127 S.Ct. at 1739. When one of ordinary skill uses a known technique to improve a device, the use of that technique is obvious when applied to a similar device, unless its application is beyond his or her skill. *Id.* at 1740.

The patent's bonding and reflectance limitations are met and accomplished by painting the TWP screen black. This technique was well known in the industry at the time of the invention. Indeed, Andersen does not seem to dispute that painting the material black to decrease the TWP material's reflectance value and bond its wires was obvious. Andersen's own

**2.** When the Court considers that this product is part of a window or door screen, the Examiner's added limitation is striking in its triviality. Frankly, the Court cannot conceive of a usable insect screen which does not permit ventilation. This is not, after all, an insect wall.

expert testified to this. (Laurence Armstrong Dep., Def.'s Ex. 7 at 24–26).

Andersen ultimately argues that a screen manufacturer of ordinary skill would not think to use TWP screening as an insect screen, and would never dream of putting it in a window frame. Andersen premises its argument on the fact that TWP's previous use had been as electromagnetic shielding, as opposed to insect screening. This argument fails.

"Common sense teaches ... that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *KSR* at 1742. "When a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or in a different one." *Id.* at 1740.

Andersen, as well as other screen manufacturers, wished to reduce visibility of insect screens. The pursuit continues. As such, it was a simple act of common sense—rather than of invention—for an insect screen designer of ordinary skill to look beyond the common insect screen materials to find a screening material that was harder to see. For someone seeking such material, a look at a publicly accessible website advertising screening and mesh materials for sale is scarcely an act of inventive genius.

TWP is a fine-mesh metal screen. While its advertised use was electromagnetic shielding, that fact does not mean it was not available for other uses. It had simply not been tried as insect screening. But the fact that this had not been done

does not make the effort to do so nonobvious and patent-worthy.

Andersen asks the Court to consider that TWP's fine quality mesh teaches away from its use as an insect screen in a window. It seeks to bolster this argument by quoting *KSR*, 127 S.Ct. at 1740, which noted, "when the prior art teaches away from combining certain known elements, discovery of a successful means of combining them is more likely to be nonobvious." The Court is not persuaded.

The TWP screening was certainly advertised as electromagnetic shielding. But the same website referred to it as a highly transparent screen. TWP was also advertised as capable of use in "shielded windows." It is disingenuous to argue that these references teach away from possible use as reduced visibility screening. The product was made of stainless steel possessing a tensile strength greater than 5500 psi. It is undisputedly a "mesh of thin linear elements permitting ventilation." (*See* Claim Construction Order 3.) Possessing these qualities, the TWP screen was an obvious candidate for insect screening.

So the Court considers an insect screen designer, ordinarily skilled in the art, looking for reduced visibility screening. He or she types "screen" into a search engine and is directed to a website. Clicking on the website, the ordinarily skilled insect screen designer reads of, and sees, TWP— a commercially available highly transparent screening material. At this point, the Court is constrained to find it obvious that our ordinarily skilled screen designer would attempt to incorporate this material into a window frame.[3]

---

3. The parties agree that painting screening material black makes it less visible. This fact is not part of the present invention. Similarly, use of paint as a bonding material was also well known to one of ordinary skill in the art. Finally, the use of material possessing tensile strength of 5500 p.s.i. was also well known. At oral argument, plaintiff's attorney acknowledged that screening material must possess this strength in order to both bar insect

■ A person of ordinary skill in the art "is also a person of ordinary creativity, not an automaton." *KSR*, 127 S.Ct. at 1742. Once the screen designer discovered the TWP material, the Court finds it obvious to attempt to place it in a window frame to see if it would actually exclude insects, and being fine gauged, whether it might offer reduced visibility. On these facts, the Court finds defendants have made a strong prima facie showing of obviousness.

## 2. Secondary Considerations

In the face of this prima facie showing, Andersen points to secondary factors such as defendants' long-felt, but unresolved need for reduced visibility screening; the failure of others to develop such screening; and the unexpected results achieved by its invention. Secondary considerations such as these can be "utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." *Graham*, 383 U.S. at 17–18, 86 S.Ct. 684.

As an initial matter, the Court cannot credit Andersen's suggestion that Pella's advertisements of its VividView product means anything. The mere fact that a company calls its products "new," or even "revolutionary," is commonplace. The term "virtually invisible" is puffery of the first order. The Court draws nothing from defendants' use of this type of language in their advertisements. Such is the nature of advertising. Boastful phrases in advertisements are aimed at consumers; they prove little or nothing about whether an invention is obvious.

More importantly, *Graham* makes clear that secondary factors are simply one of four factors relevant to obviousness. *Graham*, 383 U.S. at 17–18, 86 S.Ct. 684. Courts are reluctant to allow secondary factors to override a strong determination of obviousness based on primary consider-

ations, even when all evidence relating to secondary factors is resolved in favor of plaintiff. *See KSR*, 127 S.Ct. at 1745; *Leapfrog Enter. v. Fisher–Price, Inc.*, 485 F.3d 1157, 1162 (Fed.Cir.2007) ("given the strength of the prima facie obviousness showing, the evidence on secondary considerations was inadequate to overcome a final conclusion that [the claim] would have been obvious"); *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1371 (Fed.Cir. 2006) ("secondary considerations of nonobviousness are insufficient as a matter of law to overcome our conclusion that the evidence *only* supports a legal conclusion that claim 1 would have been obvious") (emphasis in original).

As the Supreme Court in KSR stated:

Where, as here, the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate.

127 S.Ct. at 1745–46. The three primary considerations are not in dispute here. The parties agree on the scope of the prior art, the differences between the prior art and claimed invention, and the level of skill in the art. And in light of these undisputed factors, the Court has determined that Andersen's invention was obvious. Even assuming Andersen's contentions regarding the secondary factors are true, the Court's determination of obviousness cannot be rebutted by these secondary factors.

Finally, after all of this discussion of the TWP product, the Court must note that it has never been commercially successful. The invention, of course, is not the product. A validly-issued patent reserves to its owner the right to practice the claimed

access and egress, and give it the strength

necessary to permit ordinary consumer use.

invention. For purposes of this motion, this "invention" is defined in the metes and bounds of independent claims 22 and 76 of the '612 patent. And it is ultimately here where the patent fails for obviousness: The Court finds it was obvious for one of ordinary skill in the art to attempt to incorporate a fine mesh screening which allowed air to move while blocking out insects into a fenestration unit in an effort to obtain a less-visible screen.

III. *Conclusion*

The claims of plaintiff's patent are obvious; thus, the patent is invalid as a matter of law. Accordingly, IT IS ORDERED that:

1. The Court's Order, dated October 2, 2006, [Docket No. 237] is vacated in part, insofar as it touches defendants' motion.

2. Defendants' motion for summary judgment [Docket No. 181] is granted.

This action is dismissed with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.